**22-11556**

IN THE

# United States Court of Appeals

## FOR THE ELEVENTH CIRCUIT

◆◆◆

ISAAC PAYNE,

*Plaintiff-Appellant,*

—v.—

SAVANNAH COLLEGE OF ART AND DESIGN, INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

## BRIEF FOR DEFENDANT-APPELLEE

Leah Ward Sears
SMITH, GAMBRELL & RUSSELL, LLP
1105 West Peachtree Street NE,
Suite 1000
Atlanta, Georgia 30309
(404) 815-3506

Joseph M. English
Michael Eric Ross
Kelly Casey Mullally
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339
(770) 434-6868

*Counsel for Defendant-Appellee*

Isaac Payne v. Savannah College of Art and Design, Inc., Appeal No. 22-1155

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

In compliance with Rule 26.1 of the Federal Rules of Appellate Procedure and

Eleventh Circuit Rule 26.1, Defendant-Appellee certifies that Plaintiff-Appellant's

Certificate of Interested Persons and Corporate Disclosure Statement is complete.

No publicly held corporation owns 10% or more of a party's stock.

Respectfully submitted this 6th day of October, 2022.

*/s/ Leah Ward Sears*
Leah Ward Sears
SMITH GAMBRELL & RUSSELL, LLP
1105 West Peachtree Street NE, Suite 1000
Atlanta, Georgia 30309
(404) 815-3506
lsears@sgrlaw.com

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee respectfully submits oral argument is unnecessary. The briefs and record on appeal adequately present the facts and legal arguments involved in this case, and oral argument would not significantly aid the Court's decisional process. If the Court believes oral argument will be helpful, however, Defendant-Appellee welcomes the opportunity to participate in it.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ...................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ................................. i

TABLE OF CONTENTS ......................................................................... ii

TABLE OF CITATIONS ........................................................................ iv

INTRODUCTION ...................................................................................1

STATEMENT OF THE ISSUES..............................................................2

STATEMENT OF THE CASE..................................................................2

I.    Statement of Facts ......................................................................2

II.   Course of Proceedings and Dispositions in the District Court.....................4

STANDARD OF REVIEW ......................................................................5

SUMMARY OF THE ARGUMENT ........................................................5

ARGUMENT ...........................................................................................7

I.    The District Court Properly Determined That the Arbitration Agreement Is
      Not Unconscionable..................................................................7

   A.   The Cost-Shifting Provision Is Not Unconscionable.................................9

   B.   The Arbitrator-Selection Provision Is Not Unconscionable....................16

   C.   The ADRPA and Arbitration Procedures Are Not Unconscionable........18

      i.  The ADRPA Is Not Too Indefinite to be Enforced .................................19

      ii. Alleged Lack of Mutuality .........................................................23

ii

    D.   Any Allegedly Unconscionable Provisions Are Severable ......................25

II.   The District Court Properly Determined That SCAD Did Not Waive Its Right to Arbitrate.......................................................................................28

III.  The District Court Did Not Abuse Its Discretion in Denying Payne Early Discovery ..................................................................................................33

CONCLUSION ..........................................................................................................35

CERTIFICATE OF COMPLIANCE...................................................................CC-1

# TABLE OF CITATIONS

## Cases

*Anders v. Hometown Mortg. Servs.*,
  346 F.3d 1024 (11th Cir. 2003) ..................................................... 26, 27

*Apollo Md Bus. Servs. LLC v. Amerigroup Corp.*,
  No. 1:16-cv-4814, 2017 U.S. Dist. LEXIS 230235 (N.D. Ga. Nov. 27, 2017) .....8

*BMW Fin. Servs., N.A. v. Smoke Rise Corp.*,
  486 S.E.2d 629 (Ga. Ct. App. 1997)......................................................9

*Bryant v. Jones*,
  575 F.3d 1281 (11th Cir. 2009) ............................................................23

*Caley v. Gulfstream Aero. Corp.*,
  428 F.3d 1359 (11th Cir. 2005) .................................................. 7, 18, 24

*Cannon v. S. Atlanta Collision Ctr., LLC*,
  No. 1:11-CV-1030, 2012 U.S. Dist. LEXIS 39979 (N.D. Ga. Feb. 27, 2012).....18

*Cannon v. South Atlanta Collision Center, LLC*,
  No. 1:11-CV-1030,
  2012 U.S. Dist. LEXIS 39974 (N.D. Ga. Mar. 22, 2012) ...................................27

*Crawford v. Great Am. Cash Advance, Inc.*,
  644 S.E.2d 522 (Ga. Ct. App. 2007)....................................................24

*Crespo v. Kapanisis*,
  No. 21-cv-6963,
  2022 U.S. Dist. LEXIS 131579 (E.D.N.Y. July 23, 2022)............................ 15, 16

*Dale v. Comcast Corp.*,
  498 F.3d 1216 (11th Cir. 2007) ...........................................................8

*Emplrs. Ins. of Wausau v. Bright Metal Specialties, Inc.*,
  251 F.3d 1316 (11th Cir. 2001) ...........................................................5

*Escobar v. Celebration Cruise Operator, Inc.*,
  805 F.3d 1279 (11th Cir. 2015) ..........................................................11

*F.N. Roberts Pest Control Co. v. McDonald*,
  208 S.E.2d 13 (Ga. Ct. App. 1974)..........................................................9

*Fatt Katt Enters., Inc. v. Rocksolid Granite*,
  No. 1:17-cv-1900, 2018 U.S. Dist. LEXIS 8119 (N.D. Ga. Jan.11, 2018) ...........8

*Granite Rock Co. v. Teamsters*,
  561 U.S. 287 (2010)............................................................................20

*Green Tree Financial Corp.-Alabama v. Randolph*,
  531 U.S. 79 (2000)...............................................................................10

*Gutierrez v. Wells Fargo Bank, NA*,
  889 F.3d 1230 (11th Cir. 2018) ....................................... 28, 29, 30, 31

*Harris v. Chapman*,
  97 F.3d 499 (11th Cir. 1996) ...................................................................5

*Hill v. Rent-A-Center, Inc.*,
  398 F.3d 1286 (11th Cir. 2005) .............................................................20

*Hooters of America, Inc. v. Phillips¸*
  173 F.3d 933 (4th Cir. 1999) .................................................................18

*Ivax Corp. v. B. Braun of Am., Inc.*,
  286 F.3d 1309 (11th Cir. 2002) .............................................................29

*Jackson v. Cintas Corp.*,
  425 F.3d 1313 (11th Cir. 2005) .............................................................25

*Jordan v. Comm'r, Miss. Dep't of Corr.*,
  947 F.3d 1322 (11th Cir. 2020) ...............................................................5

*Kaspers v. Comcast Corp.*,
  631 F. App'x 779 (11th Cir. 2015) (unpublished)................................15

*Khoury v. Miami-Dade Cty. Sch. Bd.*,
  4 F.4th 1118 (11th Cir. 2021) ...............................................................35

*Kitchen v. Insuramerica Corp.*,
  675 S.E.2d 598 (Ga. Ct. App. 2009)......................................................20

*Krinsk v. SunTrust Banks, Inc.*,
654 F.3d 1194 (11th Cir. 2011) ................................................... 29, 31

*Matthews v. Ultimate Sports Bar, LLC,*
No. 1:13-CV-2352-TWT, 2016 U.S. Dist. LEXIS 98367 (N.D. Ga. July 28,
2016) ............................................................................................. 20, 27

*Mitchell v. Ford Motor Credit Co.*,
68 F. Supp. 2d 1315 (N.D. Ga. 1998) ..................................................9

*Morgan v. Sundance, Inc.*,
142 S. Ct. 1708 (2022) .......................................................... 20, 30, 31

* *Musnick v. King Motor Co. of Fort Lauderdale*,
325 F.3d 1255 (11th Cir. 2003) ................................................. passim

*NEC Techs., Inc. v. Nelson*,
478 S.E.2d 769 (Ga. 1996) ....................................................... 7, 9, 18

*Neibert v. Computer Scis. Corp.,*
No. 1:12-cv-02277, 2014 U.S. Dist. LEXIS 186871 (N.D. Ga. Feb. 4, 2014) ...24,
25

*Nicols v. Murray Ford of Kingsland Inc.*,
No. CV 216-99, 2017 U.S. Dist. LEXIS 5483 (S.D. Ga. Jan. 13, 2017) ............20

*Perez v. Globe Airport Security Servs.*, *Inc.*,
253 F.3d 1280 (11th Cir. 2001), *vacated*, 294 F.3d 1275 (11th Cir. 2002) .........26

*R.L. Kimsey Cotton Co. v. Ferguson*,
214 S.E.2d 360 (Ga. 1975) ..................................................................9

*Residential Constructors, LLC v. ACE Prop. & Cas. Ins. Co.*,
No. 2:05-cv-01318, 2006 U.S. Dist. LEXIS 36943 (D. Nev. June 5, 2006) ........32

*Saturna v. Bickley Constr. Co.*,
555 S.E.2d 825 (Ga. Ct. App. 2001) ...................................................24

*Terminix Int'l Co. v. Palmer Ranch Ltd.*,
432 F.3d 1327 (11th Cir. 2005) ..........................................................25

*United States v. Curtis*,
380 F.3d 1308 (11th Cir. 2004) .............................................................3

*United States v. Olano,*
  507 U.S. 725 (1993)............................................................................31

*WellStar Health Systems, Inc. v. Kemp*,
  751 S.E.2d 446 (Ga. Ct. App. 2013)...................................................32

*Young v. Stump*,
  669 S.E.2d 148 (Ga. Ct. App. 2008)...................................................19

*Zulauf v. Amerisave Mortg. Corp.*,
  No. 1:11-cv-1784, 2011 U.S. Dist. LEXIS 156699 (N.D. Ga. Nov. 23, 2011) ...27

**Statutes**

42 U.S.C. § 1981 ................................................................................1, 4

42 U.S.C. § 1988 (b) -(c) .......................................................................12

O.C.G.A. § 13-1-8................................................................................25

O.C.G.A. § 13-2-2(4)............................................................... 19, 20, 23

O.C.G.A. § 13-2-2(5)............................................................................19

**Rules**

11th Cir. R. 3-1 .....................................................................................3

## INTRODUCTION

Plaintiff-Appellant Isaac Payne sued his former employer, Defendant-Appellee, The Savannah College of Art and Design, Inc. ("SCAD"), alleging claims of race discrimination and retaliation under 42 U.S.C. § 1981. SCAD moved to dismiss and compel the arbitration of Payne's claims pursuant to an arbitration agreement and procedures to which Payne agreed when SCAD hired him. In a thorough and balanced eighty-two-page Report and Recommendation, the Magistrate Judge carefully considered Payne's arguments and recommended that the court grant SCAD's motion. The District Judge then issued a full and reasoned order considering Payne's objections to the Report and Recommendation, adopting its reasoning and recommended disposition.

The instant appeal reargues a laundry list of issues based on numerous arbitration provisions and procedures that have been carefully considered twice in the trial court. None establishes the parties' arbitration agreement is unconscionable. Further, the remedy for any allegedly unconscionable provision would be a severance of the provision rather than a reversal of the District Court judgment. Payne's cursory waiver and discovery arguments similarly lack merit. This Court should accordingly affirm the District Court's decision across the board.

## STATEMENT OF THE ISSUES

I.    Whether the District Court properly determined none of the challenged provisions in the parties' arbitration agreement is unconscionable, the agreement is enforceable and subject to severability, and Payne should be compelled to arbitrate his claims against SCAD.

II.    Whether the District Court properly determined SCAD did not waive its right to arbitration where Payne can point to no evidence showing SCAD substantially participated in litigation to a point inconsistent with an intent to arbitrate and, to the contrary, SCAD engaged only in efforts to enforce the arbitration agreement.

III.    Whether the District Court abused its discretion in denying Payne's request for early discovery where the court could decide the issues before it without any additional evidence, and Payne failed to show good cause to justify early discovery.

## STATEMENT OF THE CASE

### I.    Statement of Facts[1]

SCAD is a non-profit institution of higher education.  (Doc. 20-1 at 30, ¶ 3).[2] At all relevant times, SCAD has maintained a mandatory arbitration policy with its employees that is set forth in an Alternative Dispute Resolution Policy and

---

[1] SCAD disputes Payne's lengthy narrative regarding his underlying claim, which is irrelevant to this appeal in any event.

[2] "Doc." numbers herein correspond to the document number assigned on the District Court's docket sheet.  Citations to page numbers correspond to the page numbers in the header generated by the District Court's electronic filing system.

Agreement ("ADRPA"), which provides that any arbitration "shall be conducted in accordance with and subject to the rules and procedures" in the accompanying "Arbitration Procedures." (*Id.* at 30, ℙ 6). The ADRPA also contains a severability clause, stating: "Should any term or provision of this ADRPA or the Arbitration Procedures, or portion thereof, be declared void or unenforceable, it shall be severed, and the remainder shall be enforceable." (*Id.* at 75). Georgia law governs the agreement. (Doc. 43 at 15).

SCAD hired Payne to coach the school's fishing teams in August of 2015. (Doc. 13 at 3, ℙ 17). Payne concedes that the parties formed an agreement to arbitrate in 2015 when SCAD hired him. (Doc. 50 at 2; Doc. 43 at 15). The ADRPA in effect in 2015 and the Arbitration Procedures reflect the terms of the arbitration agreement between Payne and SCAD. (Doc. 50 at 2; Doc. 43 at 19).[3]

---

[3] Payne argued in opposition to SCAD's Renewed Motion to Dismiss and Compel Arbitration that a 2019 version of the ADRPA governed (Doc. 43 at 19), but he did not pursue that argument in his objections to the R&R (Doc. 50 at 7-12) and does not (and cannot) pursue it on appeal. *United States v. Curtis*, 380 F.3d 1308, 1310 (11th Cir. 2004) ("[I]ssues not raised by a defendant in his initial brief on appeal are deemed waived"); 11th Cir. R. 3-1 (providing unobjected-to challenges to factual and legal conclusions waived, subject only to plain error review); Doc. 44 (informing Payne of Rule 3-1). Payne's comments about the 2019 ADRPA are thus unnecessary and irrelevant.

In March of 2018, SCAD terminated Payne's employment for legitimate, nondiscriminatory reasons after SCAD received a number of disturbing complaints about him from SCAD students and parents.  (Doc. 20-1 at 32).

## II.    Course of Proceedings and Dispositions in the District Court

On December 10, 2020, Payne filed a Complaint against SCAD in the Northern District of Georgia, alleging claims of race discrimination and retaliation under 42 U.S.C. § 1981.  (Doc. 1).  Payne subsequently filed a First Amended Complaint ("FAC").  (Doc. 13).

The parties filed two motions relevant to this appeal.  SCAD sought to dismiss the FAC, filing a Refiled Motion to Dismiss and to Compel Arbitration on July 6, 2021.  (Doc. 35).  On August 12, 2021, Payne filed a Renewed Motion to Take Limited Early Discovery on Issues of Arbitrability.  (Doc. 40).

On November 4, 2021, the Magistrate Judge issued an Order and Final Report and Recommendation ("R&R") addressing the two motions.  (Doc. 43).  The Magistrate Judge recommended the District Judge grant SCAD's motion, refer Payne's claims to arbitration, and dismiss the case.  The Magistrate Judge also denied Payne's request for early discovery on the issues of arbitrability.  (*Id.*).  Payne subsequently filed objections to some, but not all, aspects of the R&R.  (Doc. 46).  The District Judge permitted Payne to exceed the applicable page limit for his objections.  (01/13/2022 Order (Minute Entry)).

4

By order entered March 30, 2022, the District Judge adopted the R&R as the order of the court, dismissed the action, compelled arbitration, and directed the Clerk to close the matter.  (Doc. 50).  The District Judge also overruled Payne's objection to the Magistrate Judge's denial of his request for discovery.  (*Id.*).

## STANDARD OF REVIEW

The Court reviews *de novo* a district court's order compelling arbitration. *Emplrs. Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1321 (11th Cir. 2001).

"District judges are accorded wide discretion in ruling upon discovery motions, and appellate review is accordingly deferential."  *Harris v. Chapman*, 97 F.3d 499, 506 (11th Cir. 1996).  The Court reviews a District Judge's adoption of a Magistrate Judge's discovery ruling for an abuse of discretion.  *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1328 (11th Cir. 2020).

## SUMMARY OF THE ARGUMENT

Payne entered into a valid agreement to submit any employment-related legal claims against SCAD to confidential, binding arbitration. Payne does not deny that his Section 1981 claims are within the scope of the ADRPA.  Instead, he raises a series of challenges to certain provisions within the arbitration agreement, but all of his arguments lack merit.  The District Court properly analyzed the ADRPA, as it would any other contract, consistent with Georgia law and within the rules of

contract construction, to conclude that Payne did not meet his burden of showing the ADRPA was unconscionable under Georgia law.  The District Court did not reject Payne's claims because of a "policy favoring arbitration" but because the ADRPA is a legally-sound agreement that compels arbitration.

In particular, the District Court thoroughly analyzed each of the provisions Payne challenges on appeal and properly concluded each is enforceable.  First, Payne's cost-shifting argument fails because Payne was unable to prove that he is *likely* to bear the cost of arbitration and that those costs would be prohibitive to the pursuit of his claims.  Payne's next argument, regarding the arbitrator-selection provisions in the ADRPA, fails as it lacks any supporting authority and requires a tortured reading of the plain language of the arbitrator-selection provisions. The ADRPA expresses a strong preference for retired federal judges to arbitrate disputes, but it does not strictly limit the pool of potential arbitrators to retired federal judges and permits a different arbitrator to be selected in certain circumstances.  The Court should also reject Payne's procedural unconscionability arguments.  As the District Court correctly noted, even if Payne is right about certain provisions in the ADRPA lacking mutuality, those terms do not put the agreement over the very high bar for unconscionability under Georgia law.  Moreover, even if any of the provisions of the ADRPA were unconscionable, its severability clause requires that any offending provisions be severed, as the District Court properly concluded.

Payne's argument that SCAD waived its right to arbitrate this dispute is also wrong. It is nonsensical that SCAD's lawful actions in dealing with a former student more than a year before SCAD even learned of Payne's claims could form the basis of a waiver of the right to arbitrate Payne's claims. Payne can point to no evidence of SCAD acting in a manner inconsistent with the right of arbitration. To the contrary, SCAD has consistently asserted its right to arbitrate since learning of Payne's claim.

Lastly, the District Court also correctly denied Payne's request for early discovery. None of Payne's requested discovery is material to the relevant legal standards, and the District Court did not abuse its discretion in refusing a wasteful expansion of this litigation that should not have been brought in the first place.

The Court should accordingly affirm the District Court's order denying early discovery and its judgment compelling arbitration and dismissing the case.

## ARGUMENT

## I.    The District Court Properly Determined That the Arbitration Agreement Is Not Unconscionable

"Under Georgia law, 'procedural unconscionability addresses the process of making the contract, while substantive unconscionability looks to the contractual terms themselves.'" *Caley v. Gulfstream Aero. Corp.*, 428 F.3d 1359, 1377 (11th Cir. 2005) (quoting *NEC Techs., Inc. v. Nelson*, 478 S.E.2d 769, 771 n.2 (Ga. 1996)). Georgia law requires both procedural and substantive unconscionability for a

contract to be struck down as unconscionable. *See, e.g.*, *Fatt Katt Enters., Inc. v. Rocksolid Granite*, No. 1:17-cv-1900, 2018 U.S. Dist. LEXIS 8119, at *16 n.3 (N.D. Ga. Jan.11, 2018) ("For a contract to be found unconscionable under Georgia law, there must be both procedural and substantive unconscionability."); *Apollo Md Bus. Servs. LLC v. Amerigroup Corp.,* No. 1:16-cv-4814, 2017 U.S. Dist. LEXIS 230235, at * 16 (N.D. Ga. Nov. 27, 2017) ("Georgia law … sets a high bar for finding unconscionability. In particular, Georgia law typically requires both procedural and substantive unconscionability to be present."). Payne relies only on an inference from *Dale v. Comcast Corp.*, 498 F.3d 1216 (11th Cir. 2007), which involved a class-action waiver in a consumer context in which the plaintiffs did not have the option to opt out, to argue the contrary (Payne Br.[4] at 28), but it does not appear that the issue was presented to the Court in *Dale*. Regardless, the arbitration agreement is neither substantively nor procedurally unconscionable, as discussed below.[5] (Doc. 43 at 49 n.16).

---

[4] Payne's principal brief. Citations to page numbers correspond to Payne's own pagination, at the bottom of each page.

[5] Payne's only assertion of procedural unconscionability applies to the allegedly indefinite and non-mutual terms of the arbitration agreement. (Payne Br. 29 n.7, 53). And with respect to alleged non-mutuality, even that argument is waived, *infra* Part I.C.ii, as he previously asserted only that the purported lack of mutuality was *substantively* unconscionable (*see, e.g.,* Doc. 38 at 2 (heading C.3.b); Doc. 46 at 25; Doc. 43 at 59-62).

Georgia limits the unconscionability doctrine to those few contracts so "abhorrent to good morals and conscience" that "no sane person not acting under a delusion would make and that no honest man would take advantage of." *NEC Techs.*, 478 S.E.2d at 771 n.2 (quoting *R.L. Kimsey Cotton Co. v. Ferguson*, 214 S.E.2d 360, 364 (Ga. 1975); *F.N. Roberts Pest Control Co. v. McDonald*, 208 S.E.2d 13, 15 (Ga. Ct. App. 1974)); *see also Mitchell v. Ford Motor Credit Co.*, 68 F. Supp. 2d 1315, 1319 (N.D. Ga. 1998) ("Unconscionable conduct must 'shock the conscience.'") (quoting *BMW Fin. Servs., N.A. v. Smoke Rise Corp.*, 486 S.E.2d 629, 630 (Ga. Ct. App. 1997)).  The arbitration agreement here falls well short of this demanding test.

## A.    The Cost-Shifting Provision Is Not Unconscionable

Payne appeals the District Court's decision that Payne did not meet his "burden of establishing that enforcement of the agreement would 'preclude' him from 'effectively vindicating [his] federal statutory rights in the arbitral forum.'" (Doc 43 at 55 (quoting *Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255 (11th Cir. 2003)); Doc. 50 at 8 (adopting R&R's conclusions)).  Payne's arguments fall flat.

The ADRPA provides in pertinent part that "the arbitrator shall require the non-prevailing party to bear the costs of the arbitrator's fees."  (Doc. 20-1 at 74). "[A]n arbitration agreement is not unenforceable merely because it may involve

some 'fee-shifting.'" *Musnick*, 325 F.3d at 1259 (relying on *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000)). Payne bears the burden to "*demonstrate* that he is *likely* to bear [prohibitive arbitration] costs." *Musnick,* 325 F.3d at 1258 (emphasis in original). The District Court correctly relied on *Musnick* and considered Payne's evidence in depth to conclude that Payne failed to "show that he is *likely* to bear the shifted costs. Because Payne's evidence on this point is speculative at this stage of the litigation, there is no basis upon which to find that he is likely to bear the costs." (Doc. 50 at 8) (emphasis in original). Payne's attempts to distinguish *Musnick* based on how "[t]he arbitrator is … *likely* to view cost shifting" (Payne Br. at 33) (emphasis added) only underscore the layers of speculation on which his argument depends and thus do not advance his position. *Musnick*, 325 F.3d at 1260 (holding that speculation about prohibitive costs is insufficient to invalidate an otherwise enforceable arbitration agreement).

Payne's allegations that the costs of arbitrating his Section1981 claims would be prohibitive to him come up empty even before considering any evidence supporting this assertion. As an initial matter, the cost-shifting provisions shift to the non-prevailing party only the arbitrator's fees, not any other costs of the

arbitration.[6]  Payne does not contend that it is unconscionable for him to have to pay 50% of the arbitrator's fees, which would be the case absent the cost-shifting provisions.  He is only complaining about the risk of having to be on the hook for the other 50% of the arbitrator's fees too, if he is not the prevailing party.[7]

In fact, the cost-shifting provisions would benefit Payne if he is the prevailing party by shifting to SCAD the 50% of the arbitrator's fees for which Payne would otherwise be responsible. As such, the cost-shifting provisions might actually encourage current and former SCAD employees to pursue their claims against SCAD in arbitration.  Given that the arbitration agreement requires SCAD to advance the cost of the arbitrator's fees, Payne also cannot say that he would be denied access to the arbitral forum and precluded from vindicating his rights.  *See, e.g., Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1292 (11th Cir. 2015) (rejecting prohibitive-cost argument and affirming enforcement of arbitration agreement where, among other things, cost-splitting clause stated employer would pay initial cost of arbitration and therefore employee had access to forum).

---

[6] Even without the cost-shifting provisions, the arbitrator could still exercise discretion to require Payne to pay SCAD's share of the arbitrator's fees if Payne is not the prevailing party.

[7] The arbitrator's fees to arbitrate the merits of Payne's claims that are estimated by his expert should therefore be cut in half for purposes of Payne's unconscionability argument based on the cost-shifting provisions.

Payne also cannot draw any comfort from the provision in the ADRPA that "[a]ttorney's fees, expert witness fees, and costs will be paid by the respective parties unless the arbitrator awards otherwise." (Doc. 20-1 at 74). It would be no different in court, where Payne would incur these fees and costs of his own and could be liable for those of SCAD, too, if SCAD is the prevailing party on Payne's Section 1981 claims. *See* 42 U.S.C. § 1988 (b) -(c). Indeed, Payne also offers no evidence that arbitration would be cost-prohibitive relative to litigation.

Turning to the evidence on which Payne does rely (Payne Br. at 36-41) fails to resolve the speculation as to which party is likely to bear the cost of arbitration. The District Court "did consider Payne's evidence of the potential cost of arbitration." (Doc. 50 at 8). The court expressly acknowledged Payne's allegations that having to pay the arbitrator's fees in this case "would be 'financially disastrous' for him and his family." (Doc. 43 at 54 (citing and quoting Payne's Declaration)). Furthermore, the District Court considered the declaration of former SCAD employee Darrell Holcomb, but properly rebuffed it noting, among other things, that (i) any intent of SCAD to enforce the fee-shifting provision against Holcomb does not bear on whether SCAD will do so against Payne or the likelihood that Payne will prevail on the merits of his Section 1981 claims in arbitration, (ii) Holcomb's layman's estimate of his exposure due to the cost-shifting provision ($200,000) is more than four times Payne's projection, and (iii) there is no way to compare the

12

financial circumstances of Payne and Holcomb.  (Doc. 43 at 58).  After listing the significant ways in which Holcomb's situation has nothing to do with "[Payne's] own risk calculus" (*id*. at 58), the District Court reasonably concluded that Holcomb's declaration was "completely unhelpful in determining whether the cost-shifting provision will prevent [Payne] from vindicating his statutory rights." (*Id*.).

As the District Court explained, "there is simply no way for the Court to know whether [Payne] is *likely* to pay those [arbitrator's] fees" (Doc. 43 at 57) (emphasis in original) because it is entirely speculative at this time (i) whether Payne will likely be the non-prevailing party on his Section 1981 claims, which presumably he does not believe,[8] (ii) whether in that event the arbitrator would decline to enforce the cost-shifting provision in the ADRPA despite its mandatory language, and (iii) whether Payne could overturn an award against him for the arbitrator's fees on appeal to a second arbitrator or a court.  (*See id.* at 57-58 & n.17).  These contingencies, individually and collectively, foreclose Payne from proving that he is *likely* to have to pay the allegedly prohibitive arbitrator's fees.

---

[8] Payne argues that it is statistically "strikingly unlikely" that he will be successful in arbitrating his Section 1981 claims.  (Payne Br. at 42).  Not only would his argument prove too much in eliminating from arbitration an entire class of claims despite the "case-by-case approach" of *Musnick*, 325 F.3d at 1259, but Payne allows that "[d]iscrimination claims, *no matter the forum*, have a lower success rate than other employment claims" (Doc. 46 at 9 n.2) (emphasis added).

Regarding item (iii), Payne argues that the success of a further appeal to the District Court is miniscule in light of the decision in *Hall Street Associates, LLC v Mattel, Inc.*, 552 U.S. 576 (2008).  (Payne Br. at 32, 45-46).  The *Hall Street* decision, however, is limited in its reach.  The Supreme Court noted:

> In holding that §§ 10 and 11 provide exclusive regimes for the review provided by the statute, we do not purport to say that they exclude more searching review based on authority outside the statute as well.  The FAA is not the only way into court for parties wanting review of arbitration awards: they may contemplate enforcement under state statutory or common law, for example, where judicial review of different scope is arguable. But here we speak only to the scope of the expeditious judicial review under §§ 9, 10, and 11, deciding nothing about other possible avenues for judicial enforcement of arbitration awards.

552 U.S. at 590.  Here, even if Payne were forced to arbitrate his claims, did not prevail at arbitration, and was ordered to pay the arbitrator's fees, Payne could appeal that award to a court.  *Musnick*, 325 F.3d at 1261.[9]  Moreover, the availability of recourse to appeal on grounds of a manifest disregard of the law was only one rationale in *Musnick*, which properly remains precedent in this Circuit.  As a result, the Court should reject Payne's argument that the cost-shifting provision here is unconscionable.

---

[9] Indeed, the Arbitration Procedures say that the awards and orders of an arbitrator in this case would be subject to appeal to a second arbitrator, whose decision "may be enforced, vacated or modified by a court as provided by law." (Doc. 35-1 at 14).

The employment arbitration standards of the AAA and JAMS (Payne Br. at 35), also do not allow Payne to avoid the conclusion that the fee-shifting provision is not unconscionable. Payne has no authority for the proposition that commercial arbitration services are the bellwether for legal unconscionability of cost-shifting provisions in private contracts. *Cf. Kaspers v. Comcast Corp.*, 631 F. App'x 779, 783 (11th Cir. 2015) (unpublished) ("We are likewise unpersuaded that AAA's refusal to arbitrate claims from Comcast because of a non-compliant damages provision renders the arbitration provision invalid or unenforceable. … AAA's administrative determination is not binding on this Court …."). There is no reason to supplant the established legal analysis with the AAA or JAMS standards.

Lastly, Payne's reliance (for the first time on appeal) on *Crespo v. Kapanisis*, No. 21-cv-6963, 2022 U.S. Dist. LEXIS 131579 (E.D.N.Y. July 23, 2022), an FLSA action, to support his unconscionability argument (Payne Br. at 34) is likewise misplaced. That court held, in pertinent part, that a provision in the disputed arbitration agreement that required the plaintiff to "share" in the arbitrator's fees, which "are likely to be substantial" because the arbitrator had to be a retired judge with at least ten years of legal experience, was substantively unconscionable and unenforceable. *Id.* at *13. The opinion does not provide any other information as to the percentage of the arbitrator's fees that had to be paid by the plaintiff or their estimated amount.

This decision, which is not binding on the Eleventh Circuit, is based on facts different than Payne's. Payne's alleged financial situation (Doc. 38-2 at 11-12, ¶¶ 48-53) is much better than that of Crespo, who alleged that "he has no savings, and that his family's only income is from his 'odd jobs' and his wife's twice weekly work as a housekeeper." *Crespo,* 2022 U.S. Dist. LEXIS 131579, at *4. But most notably, the *Crespo* court simply severed the complained-of provision, along with several others, and granted defendants' motion to compel arbitration, *id*. at *13-14, consistent with the correct disposition of this appeal even if Payne's position had any merit. *See infra* Part I.D (discussing severability clause).

## B.   The Arbitrator-Selection Provision Is Not Unconscionable

The ADRPA also provides that the arbitrator "must be a retired federal judge unless a retired federal judge is not available to hear the dispute in a timely manner." (Doc. 20-1 at 74). Payne insists that this qualification limits the pool of available arbitrators to two white, retired federal judges in Georgia and that, as such, it is unconscionable. (Payne Br. at 46). The Magistrate Judge soundly rejected this argument, and the District Court rightly agreed. (Doc. 43 at 63-64; Doc. 50 at 9).

As an initial matter, the selection criterion is not confined to Article III retired federal judges or to retired federal judges in Georgia. Hence, it includes retired federal Magistrate Judges and retired federal judges outside Georgia, to whom Payne

conveniently closes his eyes. In addition, the use of remote arbitrations[10] has exponentially increased due to the COVID pandemic, making it more likely that retired federal judges outside of Georgia would still be "available to hear the dispute [even in Georgia] in a timely manner."[11]

The qualifier, "unless a retired federal judge is not available to hear the dispute in a timely manner," must not be overlooked.  (Doc. 20-1 at 74).  If there are as few retired federal judges available as Payne suggests "to hear the dispute in a timely manner," it is more likely that the selection of the arbitrator will not be restricted by this qualification.  In short, Payne goes nowhere in contending that the hypothetical limitation on the qualifications of potential arbitrators is unconscionable.[12]

Beyond that, as the District Court recognized, Payne cited no authority,[13] and there is none, "that he has a right to an arbitrator selected from a pool that is

---

[10] As nothing in the ADRPA or Arbitration Procedures prohibits remote arbitrations, the parties could agree to proceed remotely.

[11] The availability of more retired federal judges outside of Georgia to serve as arbitrators under the ADRPA and the Arbitration Procedures is also assured because, as Payne acknowledged, "arbitration carries with it more scheduling flexibility than federal litigation, and … neither the ADRPA nor the APM set [sic] forth a time limit for scheduling the arbitration hearing once the arbitration pleading has been filed." (Doc. 46 at 16).

[12] The only remaining qualifier is that "[t]he selected arbitrator must have a minimum of five years experience in the substantive practice area of the dispute or in arbitrating similar types of disputes." (Doc. 39-1 at 42).  Payne has not challenged that qualifier as unconscionable.

[13] In each of the cases cited by Payne (Payne Br. at 60-61), the procedure for selecting the arbitrator was grossly stacked in favor of the employer.  For example,

representative of the demographics of his community, analogous to his right to select a jury from a representative cross-section of the community at trial." (Doc. 43 at 64). This lack of supporting authority is alone enough to doom Payne's argument.

### C.    The ADRPA and Arbitration Procedures Are Not Unconscionable

Payne argues that "[t]he ADRPA and APM are procedurally unconscionable because they contain indefinite and non-mutual terms." (Payne Br. at 53). The District Court was correct in rejecting this argument.

"'[P]rocedural unconscionability concerns the process of making a contract.'" *Caley*, 428 F.3d at 1377 (quoting *NEC Techs.*, 478 S.E.2d at 771). "A non-inclusive list of some factors courts have considered in determining whether a contract is procedurally unconscionable includes the age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice." *NEC Techs.*, 478 S.E.2d at 771-72.

---

in *Hooters of America, Inc. v. Phillips¸* 173 F.3d 933, 938-39 (4th Cir. 1999), two of the three arbitrators had to come from a list "created exclusively" by defendant, and in *Cannon v. S. Atlanta Collision Ctr., LLC,* No. 1:11-CV-1030, 2012 U.S. Dist. LEXIS 39979, at *14-15 (N.D. Ga. Feb. 27, 2012), the potential pool of arbitrators was effectively limited to employer-side employment lawyers and *excluded* employee-side lawyers.  The arbitrator-selection clause in the ADRPA is not remotely comparable.

The District Court was right to note "[t]he Magistrate Judge carefully analyzed the contract as [a] whole (not merely isolated clauses and provisions) and interpreted it both to give the greatest effect possible to all provisions and to avoid rendering any of the provisions meaningless." (Doc. 50 at 9) (citing *Young v. Stump*, 669 S.E.2d 148, 150 (Ga. Ct. App. 2008); O.C.G.A. § 13-2-2(4)[14] (stating that the "construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part")).

The District Court correctly agreed with the Magistrate Judge's analysis and conclusions in dispatching Payne's arguments. (Doc. 50 at 10).

### i.    The ADRPA Is Not Too Indefinite to be Enforced

Payne argues that the ADRPA and Arbitration Procedures are indefinite because they have contradictory, confusing, and unintelligible terms regarding (i) selection of the arbitrator; (ii) use of an arbitration form; and (iii) the version of the ADRPA that was in effect.  (Payne Br. at 54-58).

---

[14] This rule of contract construction trumps reliance on *contra proferentem, see* O.C.G.A. § 13-2-2(5) ("If the construction is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred[.]"), which is considered only as a last resort if a contract is ambiguous and any ambiguity cannot be resolved by the other rules of contract construction.

19

"The law does not favor destruction of contracts on grounds of uncertainty." *Kitchen v. Insuramerica Corp.*, 675 S.E.2d 598, 601 (Ga. Ct. App. 2009) (quoted in Doc. 43 at 39).  Moreover, "[t]he construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part."  O.C.G.A. § 13-2-2(4).  Applying these bedrock principles[15] and the severability clause in the ADRPA if needed, the District Court rejected Payne's contention that several allegedly contradictory and confusing terms in the ADRPA and the Arbitration Procedures are enough to make the ADRPA too indefinite to be enforced.  (Doc. 43 at 39-48).[16]  The Magistrate Judge got it right, and the District Court agreed.

---

[15] The Magistrate Judge also cited the Federal Arbitration Act's "liberal federal policy favoring arbitration agreements." (Doc. 43 at 13 (citing *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005)).  SCAD acknowledges, as Payne pointed out, in *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022), the Supreme Court clarified that frequent citing of the FAA's policy favoring arbitration "is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Id.* at 1713 (citing *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 302 (2010)). The decisions of the Magistrate Judge and District Court are unaffected by this new precedent as they are grounded in contract law, evaluating the ADRPA as they would any other contract.

[16] The Magistrate Judge additionally reasoned that the case on which Payne principally relied for his indefiniteness argument, *Matthews v. Ultimate Sports Bar, LLC,* No. 1:13-CV-2352-TWT, 2016 U.S. Dist. LEXIS 98367 (N.D. Ga. July 28, 2016), is readily distinguishable.  (Doc. 43 at 40); *see also Nicols v. Murray Ford of Kingsland Inc.*, No. CV 216-99, 2017 U.S. Dist. LEXIS 5483, at *8 (S.D. Ga. Jan. 13, 2017) ("the agreement in [*Matthews*] contained broken English resulting in 'nonsensical language' that the court could not even understand").

As to the selection of the arbitrator, the Magistrate Judge held that the counterpart provisions in the ADRPA and the Arbitration Procedures are not even contradictory, much less irreconcilably inconsistent. (Doc. 43 at 41-42). Similarly, the Magistrate Judge concluded that the allegedly conflicting provisions in the ADRPA and the Arbitration Procedures on the paperwork required to commence arbitration are not at odds with each other since they "both require the party seeking to resolve a dispute to initiate that process by submitting a form to SCAD's Vice President of Human Resources describing the dispute and the facts underlying the dispute." (*Id*. at 44). The Magistrate Judge thoroughly handled these two issues.

Regarding the version of the ADRPA in effect, the ADRPA provides, in relevant part:

> SCAD retains the right to modify or terminate this ADRPA and the Arbitration Procedures on thirty days' written notice. The policy, if any, in effect at the time a request for mediation and/or arbitration is initiated, will govern the process by which the Dispute is resolved.

(Doc. 20-1 at 75). The Magistrate Judge correctly concluded that the "in effect" clause in this provision (the "Modification Provision") is not ambiguous and that it can only reasonably be read as providing that arbitration of Payne's Section 1981 claims against SCAD is governed "by the version of the ADRPA in effect *between these two parties* when arbitration was requested [by SCAD in August 2020]." (Doc. 43 at 20) (emphasis in original). Under this test, the Magistrate Judge ruled that the version of the ADRPA that Payne agreed to at the time of his hiring by SCAD on

August 30, 2015 (the "2015 ADRPA") applies to this case in that SCAD did not give written notice of the intervening 2019 amendment of the ADRPA to Payne or any other former employees. (*Id.* at 18-19).[17]

Payne attempts to seize on this lack of written notice of the 2019 amendment to argue that *no version* of the ADRPA was in effect as to him when SCAD demanded in August 2020 that he arbitrate his Section 1981 claims. (Payne Br. at 55). The Magistrate Judge correctly declined to blow up the ADRPA on this tortured construction of the Modification Provision.  (Doc. 43 at 20-26).

First, the Magistrate Judge reasoned that "[t]he clear implication of [the thirty days' written notice clause] is that any modification to the original agreement *does not take effect* against the person to whom SCAD does not give thirty days' written notice. … Any other reading would be illogical." (*Id*. at 20) (emphasis in original). Second, the Magistrate Judge concluded that "nothing in the ADRPA indicates that the parties intended for their original agreement, the 2015 ADRPA, to become void or unenforceable if SCAD failed to provide notice of a modification," (*id*. at 21), especially where the severability clause in the ADRPA (*see* Part I.D *infra*),

---

[17] The Arbitration Procedures that were in effect on August 30, 2015 have never been changed.  (Doc. 35-1 at 2, ¶ 5).  The 2019 amendment of the ADRPA only inserted a new "prevailing party" provision if a party files a lawsuit in court to resolve claims subject to arbitration, and this provision was removed in March 2021. (Doc. 39-1 at 2, ¶ 3).  Nevertheless, SCAD offered Payne the option to have the 2019 version of the ADRPA govern this dispute.  (Doc. 39 at 7).

demonstrates just the opposite. (Doc. 43 at 22). Lastly, the Magistrate Judge recognized that any interpretation of the "in effect" clause in the Modification Provision under which no version of the ADRPA was in effect against Payne in August 2020 would fly in the teeth of the Georgia rule of contract construction to seek to "uphold [the] contract in whole," *see* O.C.G.A. § 13-2-2(4). (Doc. 43 at 24). On all these grounds,[18] Payne comes up empty in objecting to the District Court's reading of the Modification Provision as unambiguously providing that the 2015 ADRPA governs the arbitration of Payne's Section 1981 claims.

### ii.    Alleged Lack of Mutuality

Payne contends that the ADRPA and the Arbitration Procedures "have a number of non-mutual provisions that make them procedurally unconscionable." (Payne Br. at 58). By contrast, he previously asserted this lack of mutuality argument in the district court under the rubric of substantive unconscionability (*see* Doc. 38 at 2 (heading C.3.b), 32-35), and it was treated as such by the Magistrate Judge in the R&R (*see* Doc. 43 at 59-62), and again by Payne in his Objections to the R&R (Doc. 46 at 23-25). His argument is accordingly waived. *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009) ("It is well established in this circuit that, absent extraordinary circumstances, legal theories and arguments not raised squarely

---

[18] The Magistrate Judge correctly noted that "[Payne's] authority on this issue is all distinguishable." (Doc. 43 at 25).

before the district court cannot be broached for the first time on appeal.").  Even if considered, this change of tune confirms that his lack of mutuality claim is a legal theory without a home and the Court should reject it.

"Georgia law provides that 'an arbitration provision [is] not unconscionable because it lack[s] mutuality of remedy." *Caley*, 428 F.3d at 1378 (editing in original) (quoting *Saturna v. Bickley Constr. Co*., 555 S.E.2d 825, 827 (Ga. Ct. App. 2001)); *accord, e.g., Crawford v. Great Am. Cash Advance, Inc*., 644 S.E.2d 522, 525 (Ga. Ct. App. 2007).

Following this black letter law (Doc. 43 at 59-60), the Magistrate Judge ruled that these putative asymmetries, even in combination with other provisions of the ADRPA that Payne also alleged were non-mutual (*see id*. at 59), did not render the ADRPA "so one-sided as to make it unconscionable and unenforceable." (*Id*. at 62). As the Magistrate Judge summed it up, "both parties are required to arbitrate covered claims, and neither is required to arbitrate non-covered claims." (*Id.* at 59-60) (quoting *Caley*, 428 F.3d at 1378). This underlying level playing field, whether couched as mutuality of remedy or, as Payne alleges, of obligation (Payne Br. at 59), sounds the death knell for Payne's attempt to invalidate the ADRPA and the Arbitration Procedures for alleged lack of mutuality.[19]

---

[19] Payne's reliance (Payne Br. at 69) on *Neibert v. Computer Scis. Corp.,* No. 1:12-cv-02277, 2014 U.S. Dist. LEXIS 186871 (N.D. Ga. Feb. 4, 2014), *aff'd*, 621 F.

### D.     Any Allegedly Unconscionable Provisions Are Severable

Even if Payne could establish one or more of the challenged provisions to be unconscionable, this Court should affirm.  As explained in *Terminix International Co. v. Palmer Ranch Ltd.*, 432 F.3d 1327 (11th Cir. 2005):

> If … some or all of  … [an arbitration agreement's] provisions are not enforceable, then the court must determine whether the unenforceable provisions are severable. Severability is decided as a matter of state law. … If the offensive terms are severable, then the court must compel arbitration according to the remaining, valid terms of the parties' agreement.

*Id.* at 1331 (citation omitted).  Under Georgia law, "the failure of a distinct part" of a severable contract "does not void the remainder."  O.C.G.A. § 13-1-8(a).  The intent of the parties determines whether a contract is severable.  *Id.* at § 13-1-8(b).  "[S]everability clauses are enforceable under Georgia law and the FAA requires that arbitration agreements be treated no less favorably than other contracts under state law."  *Jackson v. Cintas Corp.*, 425 F.3d 1313,1317 (11th Cir. 2005).

---

App'x 585 (11th Cir. 2015) (unpublished), was raised for the first time in his objections to the R&R (Doc. 46 at 25), and is misplaced in any event.  In *Neibert,* the court held that plaintiff could not bring a breach of contract claim against defendant for its alleged failure to comply with a handbook that, pursuant to their contract, was not "contractual in nature and may be amended and abolished at the sole discretion of [defendant] at any time."  *Neibert,* 2014 U.S. Dist. LEXIS 186871, at *20-21. On this record, the court found that defendant's alleged "obligations" under the handbook were "an illusory promise" that could not be enforced.  *Id.* at *20.

The ADRPA's severability clause (Doc. 20-1 at 75)—which Payne does not contend is ambiguous—is evidence that the parties did not intend for an unenforceable provision or provisions to void the entire agreement. Where an arbitration agreement contains an unambiguous severability clause and state law favors the enforcement of severability clauses, severing unenforceable provisions and compelling arbitration is the proper course of action. *Anders v. Hometown Mortg. Servs.*, 346 F.3d 1024, 1032 (11th Cir. 2003); *see also Terminix*, 432 F.3d at 1332 (discussing *Anders*). Applying the pertinent authorities, the District Court properly analyzed the severability clause and, based on it, rejected other unenforceability arguments Payne raised but has abandoned as the case progressed. (Doc. 43 at 21-22 (analyzing severability), 42-43 (severing one forum-selection provision in favor of another); Doc. 50 at 12 (overruling objection to decision to sever forum-selection provision)).

Notably, Payne does not challenge the District Court's severability determination on appeal, and he fails to even address the relevant analysis and authorities, instead citing a series of inapplicable decisions. (Payne Br. at 60-61). In particular, Payne erroneously invokes *Perez v. Globe Airport Security Services, Inc.*, 253 F.3d 1280 (11th Cir. 2001), *vacated*, 294 F.3d 1275 (11th Cir. 2002), a case the Court has stated should not be relied upon, even as part of a court's rationale. *Musnick*, 325 F.3d at 1257 n.1 ("The district court's reliance on *Perez* … in support

of its conclusion was misplaced. At the time of the district court's decision, we had already vacated the *Perez* holding. … Similarly unavailing is Musnick's continued reliance on this case."); *Anders*, 346 F.3d at 1030 n.5 ("Anders' additional reliance upon *Perez* … is misplaced, because we have vacated our decision in that case, … and a vacated decision has no effect whatsoever[.]"); *see also Zulauf v. Amerisave Mortg. Corp.*, No. 1:11-cv-1784, 2011 U.S. Dist. LEXIS 156699, at *37 n.14 (N.D. Ga. Nov. 23, 2011) ("Plaintiffs argue that, as a policy matter, courts should not sever unenforceable provisions in arbitration agreements, citing *Perez* …. Although Plaintiffs concede that *Perez* was vacated, the Eleventh Circuit has twice instructed parties in circumstances like those here that *Perez* should not be relied upon at all.") (citing *Musnick* and *Anders*).  It thus lacks the persuasive value Payne claims.  (Payne Br. at 62 n.13).  The other decisions Payne cites are similarly unavailing as non-precedential and factually distinguishable.  (Payne Br. at 62).[20]

---

[20] For example, the agreement in *Matthews v. Ultimate Sports Bar, LLC*, No. 1:13-CV-2353, 2016 U.S. Dist. LEXIS 98367 (N.D. Ga. July 27, 2016), contained "nonsensical language" even the court could not comprehend, and "clauses that are incomprehensible and  … missing material terms" that the court could not correct without rewriting essential aspects of the agreement.  *Id.* at *9.  In *Cannon v. South Atlanta Collision Center, LLC*, No. 1:11-CV-1030, 2012 U.S. Dist. LEXIS 39974, at *1 (N.D. Ga. Mar. 22, 2012), the agreement would have similarly required rewriting as to essential terms and was "grossly one sided and unfair," *id.* at *1, including giving the defendant "unilateral control over the arbitral rules to be applied and the manner in which the proceeding is conducted, as well as how those who will arbitrate the dispute will be selected," *Cannon*, No. 1:11-CV-1030-TWT, Doc. 11 at 16 (R&R adopted by court) (unpublished), which is not the case here.  Payne fails

The Court should accordingly affirm the District Court's decision that the arbitration agreement is enforceable, severing any unenforceable provisions if needed.

## II.    The District Court Properly Determined That SCAD Did Not Waive Its Right to Arbitrate

Recognizing the inability to invalidate the arbitration agreement, Payne takes a different tack.  He argues SCAD waived its right to arbitrate this dispute altogether because SCAD asked a former member of its Fishing Team, Noah Pescitelli, to sign a confidentiality agreement (which Pescitelli did not sign, Doc. 28-1 at 4-5, ¶¶ 11-12) purportedly in exchange for continuing his athletic scholarship (Payne Br. at 63). Even accepting Payne's factual allegations *arguendo*,[21] Payne's argument has no support in the law, and the Court should accordingly reject it.

A party may waive the right to arbitrate when acting in a manner inconsistent with arbitration by allowing the matter to proceed in litigation to its advantage or by failing to abide by applicable arbitration rules.  *See, e.g., Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018) (noting "[a] key factor" in deciding

---

to establish that any of the provisions he challenges would require rewriting the agreement with respect to its essential aspects.

[21] SCAD submitted sworn testimony based on firsthand knowledge refuting Payne's hearsay allegations.  (Doc. 28-1 at 3-4, ¶¶ 7-11).  The District Court also was "not convinced … that Defendant intended to limit his ability to access witnesses during arbitration" (Doc. 43 at 67)—a conclusion Payne fails to overcome on appeal, admitting he would need discovery to substantiate his claim (Payne Br. at 65), a predicate also fatal to his claim, *see infra* Part III.

whether a party has waived the right to arbitrate is whether the party has "substantially invoked the litigation machinery prior to demanding arbitration") (cleaned up); *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1204 (11th Cir. 2011) (noting defendant, by participating in litigation for nine months before requesting case be submitted to arbitration, including opposing arbitration and "significant motions practice," had waived contractual right to compel arbitration (although defendant nevertheless "should have been allowed to rescind its waiver")); *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315-16 (11th Cir. 2002) (noting, in case involving alleged violation of processes under the parties' arbitration agreement, Court considers whether "under the totality of the circumstances, the party has acted inconsistently with the arbitration right") (internal quotation omitted). The Court has explained:

> [T]he purpose of the waiver doctrine is to prevent litigants from abusing the judicial process. Acting in a manner inconsistent with one's arbitration rights and then changing course mid-journey smacks of outcome-oriented gamesmanship played on the court and the opposing party's dime. The judicial system was not designed to accommodate a defendant who elects to forego arbitration when it believes that the outcome in litigation will be favorable to it, proceeds with extensive discovery and court proceedings, and then suddenly changes course and pursues arbitration when its prospects of victory in litigation dim. Allowing such conduct would ignore the very purpose of alternative dispute resolution: saving the parties' time and money.

*Gutierrez*, 889 F.3d at 1236.

Recently, in a case decided after the District Court entered judgment here, the

Supreme Court summarized the waiver-of-arbitration issue as follows:

> When a party who has agreed to arbitrate a dispute instead brings a
> lawsuit, the Federal Arbitration Act (FAA) entitles the defendant to file
> an application to stay the litigation. *See* 9 U.S.C. §3. But defendants do
> not always seek that relief right away. Sometimes, *they engage in
> months, or even years, of litigation—filing motions to dismiss,
> answering complaints, and discussing settlement—before deciding
> they would fare better in arbitration*. When that happens, the court faces
> a question: Has the defendant's request to switch to arbitration come
> too late?

*Morgan*, 142 S. Ct. at 1711 (emphasis added).

Given the foregoing settled law and the undisputed facts here, Payne's waiver

argument is a non-starter:  SCAD has maintained its right to arbitrate throughout this

case, as Payne concedes (Payne Br. at 22) and as the docket reflects.  It is instead

Payne misusing and attempting to push ahead the machinery of litigation.  Payne

wants to ignore the totality of the circumstances, including this "key ingredient in

the waiver analysis" that he has always had "fair notice" of SCAD's "arbitration

rights and its intent to exercise them," *Gutierrez*, 889 F.3d at 1236, but these facts

are dispositive of his waiver argument.

Although *Morgan* removed the requirement of prejudice from the waiver

inquiry, that was the "single issue" the Court decided, 142 S. Ct. at 1712, and it

otherwise underscored the applicable waiver analysis.  The opinion emphasizes,

"[w]aiver … 'is the intentional relinquishment or abandonment of a known right.'"

*id.* at 1713 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)); *see also* 142 S. Ct. at 1714 (defining scope of remand as "Did Sundance, *as the rest of the* Eighth Circuit's *test asks*, knowingly relinquish the right to arbitrate by acting inconsistently with that right?") (emphasis added). *Morgan* thus does not provide traction to reverse the District Court's decision because it does not abrogate the threshold requirement of this Court's "two-part inquiry to determine whether a party has waived its arbitration rights," *Gutierrez*, 889 F.3d at 1236; *see also Krinsk*, 654 F.3d at 1200 (noting independent "prongs" of waiver analysis).

The remaining settled elements of the waiver analysis provide all the law needed to affirm the District Court's decision. Indeed, the District Court began its analysis by properly noting that "SCAD's alleged misconduct is not the type of conduct that usually results in waiver of the right to arbitrate[.]" (Doc. 43 at 67; *id.* at 68 (focusing only secondarily on prejudice)). The court further rejected Payne's nonsensical suggestion that "attempting to obtain a release of claims from a former student-athlete who was threatening to file suit against SCAD *at least one year prior to SCAD even learning of [Payne's] claims*" was evidence of SCAD's intent to abandon its right to arbitrate Payne's claims. (Doc. 43 at 68) (emphasis added). Viewing these facts and applying the proper law *de novo* leads to the same conclusion.

Payne attempts to sidestep the foregoing dispositive authority by inviting the Court to instead rely on cases involving interference with third-party discovery in litigation. (Payne Br. at 66). But Payne's comparison of SCAD's alleged interactions with Pescitelli, which occurred more than a year before SCAD learned of Payne's claims, to cases in which attorneys pressured non-party witnesses to not cooperate in active litigation is inapt. Not only are they non-precedential, but they also differ significantly in both conduct and legal consequences. For example, in *WellStar Health Systems, Inc. v. Kemp*, 751 S.E.2d 446 (Ga. Ct. App. 2013), counsel pressured an expert witness into withdrawing from pending litigation in such a way that caused the expert to feel "he might lose everything." *Id.* at 448. Similarly, the sparse discussion of alleged interference in *Residential Constructors, LLC v. ACE Property & Casualty Insurance Co.*, No. 2:05-cv-01318, 2006 U.S. Dist. LEXIS 36943 (D. Nev. June 5, 2006), involved an allegation that the plaintiff advised or instructed non-party witnesses not to informally speak with the defendant's representatives during discovery. *Id.* at *9.

The outcome of those cases is also not commensurate with Payne's end goal: The courts did not impose waiver of processes or issues. *Wellstar*, 751 S.E.2d at 451-52 (affirming imposition of consequences on counsel); *Residential Constructors*, 2006 U.S. Dist. LEXIS 36943 at *9 (directing plaintiff not to instruct non-party witnesses not to speak with defendant's representatives). Payne's analogy

thus fails to advance the resolution of the waiver issue, and his suggestion that the Court strain to create new law to resolve a dubious[22] issue of first impression (Payne Br. at 66; *see also* Doc. 46 at 22 (acknowledging waiver "has not been applied in this context")), based on decisions that are neither the law of this Circuit nor persuasive, should be declined.

Lastly, Payne argues in the alternative that he is entitled to discovery he claims might bolster his waiver argument.  (Payne Br. at 65-66, 67).  For the reasons discussed in Part III, the District Court also did not err in denying the requested discovery.

### III.   The District Court Did Not Abuse Its Discretion in Denying Payne Early Discovery

The Court should reject Payne's tacked-on, undeveloped arguments regarding discovery.  The Magistrate Judge properly denied for lack of good cause Payne's wide-ranging requests for early discovery on at least five topics.  (Doc. 43 at 73-82). The District Judge then correctly overruled Payne's objections to the denial of three areas of discovery based on Payne's failure to show the Magistrate Judge's order was clearly erroneous or contrary to law.  (Doc. 50 at 12-13; Doc. 46 at 30-31).  On appeal, Payne now pursues two categories of discovery, but he fails to offer any

---

[22] Trying to import one body of law into a wholly different area in disregard of existing and recently reaffirmed law generally does not create an issue of first impression.

reasoned analysis in support of either request, neglecting to even acknowledge the highly deferential standard of review, *see supra* Standard of Review, that conclusively resolves this issue (Payne Br. at 67-68).

Although Payne's argument is unclear for failure to address any of the relevant standards or provide detail beyond a brief bullet-point list of topics, he at best claims that discovery related to third-party arbitrations and SCAD's communications with alleged potential witnesses is "material to the arbitrability dispute." (Payne Br. at 67). Payne, however, never explains *how* they are material. (*Id.*) To the contrary, as the District Court explained, the topics of Payne's desired discovery are irrelevant to any legal issues before the Court. (Doc. 43 at 75-77, 78-80). Indeed, Payne claims the first category of discovery is necessary to resolve the enforceability of the cost-shifting provision (Doc. 40-1 at 12; Doc. 43 at 75-76), but the requested discovery has no bearing on the analysis applicable to the alleged unconscionability of that provision under *Musnick*, *see supra* Part I.A. The second category relates to Payne's waiver argument (Doc. 46 at 30; Doc. 43 at 81), but the requested discovery also fails to bear on the applicable legal standard, *see supra* Part II.

Payne does not, and cannot, point to any clear error of judgment or the application of an incorrect legal standard in the District Court's rejection of Payne's conclusory assertions of materiality, which he fails to shore up on appeal. The discovery ruling was accordingly not an abuse of discretion, and the Court should

affirm it.  *See, e.g., Khoury v. Miami-Dade Cty. Sch. Bd.*, 4 F.4th 1118, 1125 (11th Cir. 2021) ("We review the District Court's ruling on discovery matters only for abuse of discretion.  Therefore, we will leave the district court's ruling on the motion undisturbed unless the district court has made a clear error of judgment, or has applied the wrong legal standard.") (quotation marks and citations omitted).

## CONCLUSION

For the foregoing reasons, the Court should affirm the District Court's decision compelling arbitration, denying early discovery, and dismissing the case.

Respectfully submitted this 6th day of October, 2022.

*/s/  Leah Ward Sears*
Leah Ward Sears
SMITH GAMBRELL & RUSSELL, LLP
1105 West Peachtree Street NE, Suite 1000
Atlanta, Georgia 30309
(404) 815-3506
lsears@sgrlaw.com

Joseph M. English
Michael Eric Ross
Kelly Casey Mullally
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, Georgia  30339
(770) 434-6868

*Counsel for Defendant-Appellee*

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 8,727 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in plain, roman style 14-point Times New Roman.

*/s/  Leah Ward Sears*
Leah Ward Sears
SMITH GAMBRELL & RUSSELL, LLP
1105 West Peachtree Street NE, Suite 1000
Atlanta, Georgia 30309
(404) 815-3506
lsears@sgrlaw.com

*Counsel for Defendant-Appellee*

Dated:  October 6, 2022.