Appeal No. 22-11556

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

Isaac Payne,

PLAINTIFF-APPELLANT,

v.

The Savannah College of Art and Design, Inc.,

DEFENDANT-APPELLEE

On appeal from the United States District Court

for the Northern District of Georgia, Atlanta Division

Case No. 1:20-cv-05000-JBP

## APPELLANT'S REPLY BRIEF

Daniel Werner
Georgia Bar No. 422070
Radford & Keebaugh, LLC
315 W. Ponce de Leon Ave., Suite 1080
Decatur, Georgia 30030
(678) 271-0300 Telephone
(678) 271-0314 Facsimile
dan@decaturlegal.com

Counsel for Plaintiff-Appellant

*Isaac Payne v. The Savannah College of Art and Design, Inc.*
*Appeal No. 22-11556-EE*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned attorney certifies, pursuant to Eleventh Circuit Rule 26.1-1, that the following may have an interest in the outcome of this case:

Boulee, Honorable Jean-Paul

English, Joseph M.

Fuller, Honorable J. Clay

Mullally, Kelly Casey

Payne, Isaac

Radford, James

Radford & Keebaugh, LLC

Ross, Michael Eric

Salinas, Honorable Catherine M.

Sears, Lisa Ward

Smith, Gambrell & Russell, LLP

Taylor English Duma LLP

The Savannah College of Art and Design, Inc.

Werner, Daniel

# TABLE OF CONTENTS

Table of Authorities ................................................................. v

Introduction ......................................................................... 1

Argument and Citations of Authority ..................................... 4

    I.    SCAD Misconstrues the Mr. Payne's Arguments
        and the Law Regarding Procedural and Substantive
        Unconscionability. ................................................ 4

        A.   The agreement to arbitrate is procedurally and
            substantively unconscionable .................................... 4

        B.   The agreement to arbitrate is unenforceable
            because it is substantively unconscionable, even
            if procedural unconscionability is not present ........... 5

    II.   The Cost Shifting in the Arbitration Agreement is
        Unconscionable, Despite SCAD'S Attempt to Recast It
        as an Employee Benefit. ....................................... 9

        A.   The alleged 50-50 split ................................................ 9

        B.   SCAD's claim that the arbitrator has discretion
            on fee shifting .............................................. 12

        C.   The Section 1988 non sequitur .................................... 13

        D.   The legal standard and analogous case law ............... 14

    III.  SCAD Creates a Factual Fallacy to Justify Its
        Unconscionable Arbitrator-Selection Provision. ................. 17

    IV.  The ADRPA and APM Are Indefinite ................................. 19

    V.   The Non-Mutual Terms in the ADRPA and APM
        Make the Agreement Unenforceable .................................... 19

VI.    The Unconscionable Terms Should Make
       the Entire Arbitration Agreement Unenforceable ............. 23

VII.   SCAD's Witness Interference, if Established Through
       Discovery, Would Constitute a Waiver of Its Right to
       Compel Arbitration ............................................................. 25

VIII.  Mr. Payne Should Be Able to Take Early Limited
       Discovery on Arbitrability If Disputed Questions of
       Fact Are Dispositive............................................................. 30

Conclusion................................................................................... 31

Certificate of Compliance ........................................................ 32

Certificate of Service ............................................................... 32

# TABLE OF AUTHORITIES

## CASES

*Adams v. Austal, U.S.A., L.L.C.*, 503 F. App'x 699 (11th Cir. 2013)......13

*AFLAC, Inc. v. Williams*, 264 Ga. 351, 354, 444 S.E.2d 314 (1994).........8

*AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*,
   579 F.3d 1268, 1277 (11th Cir. 2009)....................................................16

*Bazemore v. Jefferson Cap. Sys.*, LLC, 827 F.3d 1325
   (11th Cir. 2016) ......................................................................................31

*Betancourt v. Transportation Brokerage Specialists, Inc.*,
   62 Cal. App. 5th 552, 276 Cal. Rptr. 3d 785(2021)...............................26

*Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005) ..22

*Campbell's Foliage, Inc. v. Fed. Crop Ins. Corp.*, 562 F. App'x 828
   (11th Cir. 2014) ......................................................................................16

*Cannon v. S. Atlanta Collision Ctr.*, LLC, No. 1:11-CV-1030-TWT-ECS,
   2012 WL 1004914 (N.D. Ga. Feb. 27, 2012), report and
   recommendation adopted, No. 1:11-CV-1030-TWT,
   2012 WL 996696 (N.D. Ga. Mar. 22, 2012).........................8, 18, 23, 25

*Cate v. Patterson*, 354 Ga. App. 108, 840 S.E.2d 489 (2020) .................26

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694,
   54 L.Ed.2d 648 (1978))..........................................................................13

*Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301 (N.D. Ga. 2012) ...............19

*Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465  (D.C. Cir. 1997) ....... 11, 15

*Crawford v. Great Am. Cash Advance, Inc.*, 644 S.E.2d 522
  (Ga. Ct. App. 2007) ................................................................. 22

*Crespo v. Kapnisis,* No. 21-CV-6963 (BMC), 2022 WL 2916033
  (E.D.N.Y. July 25, 2022) ......................................................... 14

*Dale v. Comcast Corp.*, 453 F. Supp. 2d 1367 (N.D. Ga. 2006) ................ 6

*Dale v. Comcast Corp.*, 498 F.3d 1216 (11th Cir. 2007) ........................ 6, 7

*Epps v. Rockmo Entm't, LLC*, 849 S.E.2d 510 (Ga. Ct. App. 2020) ........ 26

*First Acceptance Ins. Co. of Georgia, Inc. v. Hughes*, 305 Ga. 489,
  826 S.E.2d 71 (2019) ......................................................... 10, 11

*Gilmer [v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) ............. 15

*Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79,
  121 S. Ct. 513, 148 L. Ed. 2d 373 (2000) ................................. 11

*Green Tree Financial Corp. of Ala. v. Wampler*, 749 So.2d 409,
  (Ala.1999) ............................................................................. 11

*Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230 (11th Cir. 2018) ..... 25

*Hall Street Assoc., LLC v. Mattel, Inc.,* 552 U.S. 576 (2008) ............ 15, 16

*Hooters of America, Inc. v. Phillips¸* 173 F.3d 933 (4th Cir. 1999) ... 18, 19

*Hughes v. Rowe*, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) ....... 13

*Kaspers v. Comcast Corp.*, 631 F. App'x 779 (11th Cir. 2015) ............... 12

*Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*,
  939 F.3d 1145 (11th Cir. 2019) ...................................................... 18, 28

*Musnick v. King Motor Co. of Fort Lauderdale,* 325 F.3d 1255
  (11th Cir. 2003) ........................................................................ 15, 16, 17

*Mullis v. Speight Seed Farms, Inc.*, 234 Ga. App. 27 (1998) ................... 5

*NEC Techs., Inc. v. Nelson*, 267 Ga. 390, 478 S.E.2d 769 (1996) ....... 5, 20

*Neibert v. Computer Scis. Corp.*, No. 1:12-CV-02277-SCJ,
  2014 WL 11462721 (N.D. Ga. Feb. 4, 2014), *aff'd*,
  621 F. App'x 585 (11th Cir. 2015) ......................................................... 22

*Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054
  (11th Cir. 1998) ...................................................................................... 24

*Perez v. Globe Airport Sec. Servs., Inc.*, 253 F.3d 1280
  (11th Cir. 2001) ...................................................................................... 24

*Reed v. Eastside Med. Ctr.*, LLC, No. 1:19-CV-03967-SDG,
  2020 WL 5659436 (N.D. Ga. Sept. 23, 2020) ........................................ 31

*Residential Constructors, LLC v. ACE Prop. & Cas. Ins. Co.*,
  No. 2:05-CV-01318-BESGWF, 2006 WL 1582122
  (D. Nev. June 5, 2006) ........................................................................... 29

*Saturna v. Bickley Constr. Co.*, 555 S.E.2d 825 (Ga. Ct. App. 2001) ..... 22

<u>STATUTES</u>

42 U.S.C. § 1988(b)-(c) ................................................................. 13

9 U.S.C. § 10 ................................................................................ 16

42 U.S.C. § 1981........................................................................... 13

<u>OTHER AUTHORITIES</u>

AAA Employment/Workplace Fee Schedule, *available at*
  https://www.adr.org/sites/default/files/Employment_Fee_Schedule1
  Nov19.pdf ............................................................................... 12

JAMS Policy on Employment Arbitration Minimum Standards of
  Procedural Fairness, *available at*
  https://www.jamsadr.com/employment-minimum-standards/. ........... 11

Restatement (Second) of Contracts § 204, Comment d (1979) .............. 11

INTRODUCTION

Plaintiff-Appellant Isaac Payne's ("Mr. Payne") opening brief ("Payne Br.") identified multiple reasons why Defendant-Appellee The Savannah College of Art and Design, Inc.'s ("SCAD") agreement to arbitrate is unenforceable. Principally, SCAD's Alternative Dispute Resolution Policy and Agreement ("ADRPA") and Arbitration Procedures manual ("APM") are substantively and procedurally unconscionable. Further, SCAD, through its conduct, may have waived its right to compel Mr. Payne to arbitrate his employment discrimination claim; a fact question that, if germane to the resolution of the arbitrability question, should be resolved through early limited discovery.

In its response ("SCAD Br."), SCAD misses the mark in various respects:

- SCAD incorrectly suggests procedural and substantive unconscionability must be present to invalidate an agreement to arbitrate. However, courts apply a balancing test. A high degree of substantive unconscionability would invalidate a contract that is not procedurally unconscionable. Further, the ADRPA and APM suffer from both procedural and substantive unconscionability.

Therefore, even if both were required, the arbitration agreement cannot be enforced.

- The record shows SCAD has weaponized the fee shifting provision of its arbitration agreement to deter employees from bringing claims. SCAD's assertion in its briefing that the fee shifting serves as an incentive for employees to arbitrate their claims is dishonest and not supported by the record.

- The arbitration agreement essentially pre-selects two White arbitrators. SCAD asks the Court to re-write the agreement to expand the pool of arbitrators by allowing remote arbitration; however, the plain language of the document prohibits this. In any case, Mr. Payne would not agree to this change, as it would place him at an even greater disadvantage than he already faces.

- SCAD is unable to explain away the indefinite and non-mutual terms that make the arbitration agreement unenforceable.

- Though SCAD argues in the alternative that these and the other unconscionable terms may be severed, this would reward employers who include one-sided or incomprehensible terms in their

arbitration agreements and unfairly shift the burden to the employees and the courts to fix the broken agreements.

- SCAD contends that a party only may waive its right to arbitrate if it allows the judicial process to progress and then changes direction mid-course to seek arbitration. Waiver, however, is not so rigid. Though an apparent issue of first impression, a party interfering with witnesses may waive its right to arbitrate if the witness interference places the opposing party at a significant disadvantage, as it would here.

- SCAD mischaracterizes Mr. Payne's request for early limited discovery. Mr. Payne would only need arbitrability discovery if either: (a) the Court determines that the extent of SCAD's previous weaponization of cost-shifting is material to whether the cost-shifting is unconscionable; and/or (b) the question of waiver is germane to the ultimate arbitrability issue and therefore requires additional factual development.

ARGUMENT AND CITATIONS OF AUTHORITY

## I. SCAD Misconstrues Mr. Payne's Arguments and the Law Regarding Procedural and Substantive Unconscionability.

SCAD's agreement to arbitrate was substantively and procedurally unconscionable. Thus, the threshold question of whether both forms of unconscionability must be present—a question SCAD incorrectly presents as dispositive—need not be resolved here. However, even if procedural unconscionability did not infect the arbitration agreement, the Court should nevertheless find it unenforceable based on substantive unconscionability grounds alone.

### A. The agreement to arbitrate is procedurally and substantively unconscionable.

Mr. Payne raises questions of substantive unconscionability—the draconian cost-shifting provision and the severely limited pool of arbitrators. In addition, he seeks to invalidate the arbitration agreement for procedural unconscionability. SCAD pretends that Mr. Payne does not raise these procedural unconscionability issues; however, a significant portion of Mr. Payne's argument is based on the indefinite and nonmutual terms of the ADRPA and APM. These are questions of procedural unconscionability. *See Mullis v. Speight Seed Farms, Inc.,*

4

234 Ga. App. 27, 29 (1998) ("comprehensibility of the contract language" is an element of procedural unconscionability); *NEC Techs., Inc. v. Nelson*, 267 Ga. 390, 392, 478 S.E.2d 769, 771–72 (1996) (procedural unconscionability analysis looks at, *inter alia*, "comprehensibility of the contract language [and] the oppressiveness of the terms….")

> B. The agreement to arbitrate is unenforceable because it is substantively unconscionable, even if procedural unconscionability is not present.

SCAD's argument to the contrary notwithstanding, even if procedural unconscionability were not present, the agreement to arbitrate should not be enforced because it is substantively unconscionable. While Georgia contract law prefers that procedural and substantive unconscionability be present before invalidating a contract, SCAD misstates a "balancing approach to the unconscionability question," *NEC Techs., Inc. v. Nelson*, 267 Ga. at 394 n.6, as prohibiting invalidating a contract or striking unconscionable terms where (1) a contract suffers from both, though substantive unconscionability is more pronounced; or (2) substantive unconscionability on its own is significant enough to invalidate the contract or strike those terms.

*1. This Court's decision in Dale v. Comcast Corp.*

Importantly, this Court's invalidation of an agreement to arbitrate in *Dale v. Comcast Corp.*, 498 F.3d 1216 (11th Cir. 2007) based solely on substantive unconscionability was not merely an "inference," as SCAD suggests; the issue had been presented to the Court.

In the proceedings before the district court in *Dale*, the plaintiff had raised both procedural and substantive unconscionability arguments. *See Dale v. Comcast Corp.*, 453 F. Supp. 2d 1367, 1375 (N.D. Ga. 2006), *rev'd and remanded*, 498 F.3d 1216 (11th Cir. 2007).   When the district court in *Dale* examined the arbitrability question, it determined the arbitration agreement was not *procedurally* unconscionable, though the plaintiff had raised four separate procedural deficiencies, and the class action waiver did not make the agreement *substantively* unconscionable. *Id.*

On appeal, the Court, in its summary of the case background, noted the plaintiff in the court below had argued that the class action waiver was substantively unconscionable *and* that the plaintiff had disputed receiving or agreeing to the arbitration agreement; a measure of procedural unconscionability. *See Dale*, 498 F.3d at 1218.   Having previously recognized the procedural unconscionability arguments raised

6

in the district court, the Court held the substantively unconscionable class action waiver rendered the entire arbitration provision in the contract unenforceable without touching the district court's ruling on procedural unconscionability. *Id.* at 1224. If both forms of unconscionability had been required, this Court would have addressed both. Rather, the Court found the class action waiver so severe as to effectively preclude suit. *Id.* This was both a logical outcome and consistent with the balancing test under Georgia law.

### 2. When is substantive unconscionability enough?

Extending this logic to a hypothetical demonstrates why a heavy weight on the substantive unconscionability side without a modicum of procedural unconscionability can and should tip the balance in favor of invalidating a contract. If, for example, an employer limited arbitrators to a pool consisting of two former judges it selected and required the non-prevailing party in an arbitration to pay a $45,000 liquidated damages penalty—both measures of substantive unconscionability—one cannot imagine a court determining the arbitration agreement would be

enforceable.[1] *See, e.g., Cannon v. S. Atlanta Collision Ctr.*, LLC, No. 1:11-CV-1030-TWT-ECS, 2012 WL 1004914, at *5 (N.D. Ga. Feb. 27, 2012), report and recommendation adopted, No. 1:11-CV-1030-TWT, 2012 WL 996696 (N.D. Ga. Mar. 22, 2012) (arbitration agreement was unconscionable in part because it required two of three panel arbitrators to be the defendant's full time employees); *AFLAC, Inc. v. Williams*, 264 Ga. 351, 354, 444 S.E.2d 314, 317 (1994) (liquidated damages cannot be imposed as a penalty).

Therefore, the question is not whether procedural unconscionability must be present along with substantive unconscionability before a contract can be invalidated. Rather, it is a question of where the line can be drawn beyond which the severity of the substantive unconscionability by itself would make the contract unenforceable. As set forth here and in Mr. Payne's opening brief, SCAD's ADRPA and APM cross that line by saddling Mr. Payne with crippling debt if he does not prevail and by effectively limiting and pre-selecting a non-diverse pool of arbitrators. As such, the agreement to arbitrate cannot be enforced on these bases alone.

---

[1] This hypothetical is not far afield from what SCAD has done in its arbitration agreement, though SCAD's mechanism for achieving these outcomes is murkier.

When coupled with the procedurally unconscionable terms, the bases for discarding the arbitration agreement are all the more pronounced.

## II. The Cost Shifting in the Arbitration Agreement is Unconscionable, Despite SCAD'S Attempt to Recast it as an Employee Benefit.

A. The alleged 50-50 split.

In an argument not made in the court below, SCAD grossly mischaracterizes Mr. Payne's argument that the cost-shifting provisions are unconscionable. Cynically, SCAD claims, without any basis or citation to authority, that "Payne does not contend that it is unconscionable for him to have to pay 50% of the arbitrator's fees, which would be the case absent the cost-shifting provisions." SCAD Br. at 11. And, moving from the cynical to the absurd, SCAD contends the cost-shifting "might actually encourage current and former SCAD employees to pursue their claims against SCAD in arbitration." *Id.* This is essentially the same as suggesting that a victim of theft who recovers 50 dollars from a thief who stole 100 dollars is 50 dollars richer. Further, in light of former SCAD employee Darnell Holcomb's declaration and deposition testimony [Docs. 38-9 & 38-10], which show the extent to

9

which SCAD uses the cost-shifting to bully employees into dropping their arbitration, the irony of SCAD's position should not be lost on the Court.

The inherent illogic of SCAD's argument notwithstanding, this Court is not addressing the nonexistent. Before it is a provision that would require Mr. Payne to pay the arbitrator's fees in their entirety if he does not prevail. Mr. Payne has established with uncontested expert testimony and a detailed financial declaration that he cannot afford to risk his livelihood to arbitrate his claim because of the 100 percent cost-shifting provision that is actually in the arbitration agreement. There was no 50-50 split to address.[2]

There is no law suggesting that an arbitration provision's silence on the parties' responsibility for an arbitrator's fees results in a *de facto* agreement to "go halfsies." On the contrary, consistent with the axiomatic principle that ambiguous terms should be interpreted against the drafter (in this case, SCAD), *see First Acceptance Ins. Co. of Georgia,*

---

[2] Even if Mr. Payne's responsibility for the arbitrator's fees were halved, it would still take him one year, seven months—rather than three years, two months—to pay for the cost of arbitration, not including less-than-monthly and emergency expenses. (Payne Decl. ¶ 59 [Doc. 38-2]). Subjecting Mr. Payne and his family to over a year-and-a-half, rather than three years, of severe financial hardship, would still be an unacceptably harsh result.

10

*Inc. v. Hughes*, 305 Ga. 489, 496, 826 S.E.2d 71, 77 (2019), if the ADRPA and APR were silent on the payment of the arbitrator's fees, they would be borne by SCAD. *See, e.g., Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1485-86 (D.C. Cir. 1997) (where arbitration agreement silent on arbitrator's fees, they are the employer's obligation).

Carrying the ADRPA and APM's hypothetical silence further into contract common law, courts may look to usage and custom to interpret the missing term. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 95 n.1, 121 S. Ct. 513, 524, 148 L. Ed. 2d 373 (2000) (Ginsberg, J., dissenting) (*dicta*, citing, *inter alia*, *Green Tree Financial Corp. of Ala. v. Wampler*, 749 So.2d 409, 415 (Ala.1999); Restatement (Second) of Contracts § 204, Comment d (1979)). As Mr. Payne noted in his opening brief, the prevailing wisdom in employment arbitration is that shifting an arbitrator's fees does dissuade employees from arbitrating claims: "An employee's access to arbitration must not be precluded by the employee's inability to pay any costs…" *See* JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness, *available at* https://www.jamsadr.com/employment-minimum-standards/. Therefore, the customary approach, taken by JAMS and AAA—the nation's two

11

largest arbitration organizations—is to require the employer to pay the arbitrator's compensation. *See Id.*; AAA Employment/Workplace Fee Schedule, *available at* https://www.adr.org/sites/default/files/ Employment_Fee_Schedule1Nov19.pdf.[3]

      B. SCAD's claim that the arbitrator has discretion on fee shifting.

SCAD also re-argues in a footnote that "[e]ven without the cost-shifting provisions, the arbitrator could still exercise discretion to require Payne to pay SCAD's share of the arbitrator's fees if Payne is not the prevailing party." SCAD Br. at 11 n.6. As Mr. Payne argues in his opening brief, this is not correct. Payne Br. at 33-34. Unlike a waiver of substantive statutory rights, which arbitrators may, in their discretion,

---

[3] SCAD's reference to the unpublished decision in *Kaspers v. Comcast Corp.*, 631 F. App'x 779, 783 (11th Cir. 2015) to suggest this Court should disregard standards set forth the JAMS and AAA employment arbitration rules is misplaced. There, the AAA declined an arbitration because of a damage-limiting provision in the contract that did not comply with AAA's rules and protocols. *Id.* at 780 & 783. This Court, however, did not address the question of whether the damages limitation was unconscionable and in fact did not specify what the limitation was (it appears the appellant had not raised the unconscionability of the provision on appeal). Rather, the Court held, in relevant part, that the selection of AAA was not "integral to the agreement." *Id.* at 783.

12

opt not to enforce, an arbitrator has no such discretion with respect to contractual obligations. *Id.*

C. The Section 1988 non sequitur.

SCAD suggests "Payne also cannot draw any comfort from the provision in the ADRPA that '[a]ttorney's fees, expert witness fees, and costs will be paid by the respective parties unless the arbitrator awards otherwise,'" noting that 42 U.S.C. § 1988(b)-(c) awards fees and costs to the prevailing party in a Section 1981 claim. SCAD Br. at 12. However, attorneys' fee and cost-shifting to a prevailing defendant under Section 1988 is not automatic, unlike the arbitrator fee-shifting provision SCAD has tried to implement. Rather, fees and costs under Section 1988 only would be shifted to a defendant if it was "frivolous, unreasonable, … groundless, or that the plaintiff continued to litigate after it clearly became so." *Adams v. Austal, U.S.A., L.L.C.*, 503 F. App'x 699, 702 (11th Cir. 2013) (quoting *Hughes v. Rowe*, 449 U.S. 5, 15, 101 S.Ct. 173, 178–79, 66 L.Ed.2d 163 (1980) & *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422, 98 S.Ct. 694, 701, 54 L.Ed.2d 648 (1978)). Mr. Payne has not argued that a standard other than the Section 1988 rule with respect to attorneys' fees or costs would apply under SCAD's arbitration

13

agreement.    It is thus puzzling why SCAD has raised this counterargument in the first place.

D.    The Legal Standard and Analogous Case Law.

SCAD's attempt to distinguish *Crespo v. Kapnisis,* No. 21-CV-6963 (BMC), 2022 WL 2916033 (E.D.N.Y. July 25, 2022) is unavailing.[4] SCAD Br. at 15-16. Though the court in *Crespo* does not specify the portion of the fee the employee would be required to pay, the court notes that "the fees of such an arbitrator are likely to be substantial." *Id.* at *6.[5] Further, the fact that Mr. Crespo was in an even more financially precarious position that Mr. Payne is a distinction without a difference.  Whether it would take Mr. Payne over three years and Mr. Crespo significantly longer to pay the costs of arbitration, they are nevertheless faced with

_____

[4] SCAD also insinuates that Mr. Payne improperly referenced *Crespo* "for the first time on appeal[.]"  SCAD Br. at 15.  Mr. Payne's filed his last brief in the court below—his reply brief in support of his objections to the Magistrate Judge's Report and Recommendation—on January 21, 2022 [Doc. 49] and his Notice of Appeal on April 13, 2022 [Doc. 52].  The Eastern District of New York issued its decision in *Crespo* on July 25, 2022; over three months after this case had been appealed.

[5] It also appears the employer in *Crespo* sought to impose an arbitration fee split, rather than shifting the arbitrator's fee entirely to the employee as SCAD seeks to do here.  One may assume, therefore, that the overall financial burden on Mr. Crespo would have been less, even if he was in an even more precarious position than Mr. Payne.

financial devastation. As the D.C. Circuit noted when addressing a similar question,

> we are unaware of any situation in American jurisprudence in which a beneficiary of a federal statute has been required to pay for the services of the judge assigned to hear her or his case. Under *Gilmer [v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991)], arbitration is supposed to be a reasonable substitute for a judicial forum. Therefore, it would undermine Congress's intent to prevent employees who are seeking to vindicate statutory rights from gaining access to a judicial forum and then require them to pay for the services of an arbitrator when they would never be required to pay for a judge in court.

*Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1484 (D.C. Cir. 1997).[6]

SCAD also is incorrect that the U.S. Supreme Court's decision in *Hall Street Assoc., LLC v. Mattel, Inc.,* 552 U.S. 576 (2008), did not abrogate *Musnick v. King Motor Co. of Fort Lauderdale,* 325 F.3d 1255 (11th Cir. 2003). To suggest this, SCAD relies on *dicta* in *Hall Street* providing that "[t]he FAA is not the only way into court for parties wanting review of arbitration awards: they may contemplate

---

[6] Though the Eleventh Circuit distinguished *Cole* in *Musnick*, 325 F.3d at 1257-58, it adopted an exception where the cost-shifting was "too speculative." *Id.* at 1258. Mr. Payne has explained in his opening brief and here why he is likely to bear the cost of arbitration. Payne Br. at 30-46.

enforcement under state statutory or common law, for example, where judicial review of different scope is arguable." *Hall Street*, 552 U.S. at 590. However, this Court and others have held that, in spite of this language, the four grounds set forth in Section 10 of the FAA, 9 U.S.C. § 10 remain "the only grounds" upon which an arbitrator's award may be vacated. *See Campbell's Foliage, Inc. v. Fed. Crop Ins. Corp.*, 562 F. App'x 828, 832 (11th Cir. 2014) (unpublished).  Neither SCAD nor Mr. Payne have any basis to suggest the FAA would not apply to this dispute, nor that it would not apply to *Musnick*, which relied upon the FAA. *Cf. AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 579 F.3d 1268, 1277 n.1 (11th Cir. 2009) (Kravitch, J., concurring in part and dissenting in part) (the *Hall Street* qualifying language does "not… suggest parties enforcing an award under the FAA may replace certain provisions of the FAA with other legal authorities").[7]

Beyond SCAD's new argument described and refuted above and its misguided argument that *Hall Street* did not abrogate *Musnick*, SCAD

---

[7] The requirement of appeal to a second arbitrator before an appeal to a court of law exacerbates the financial risk Mr. Payne would face. The appellate arbitrator's fees would be "between $300 and $600 per hour, or more…" Szalai Decl. at ¶ 25 [Doc. 38-11].

repeats the positions it took in the court below. Because Mr. Payne has addressed these questions in his opening brief, he will not repeat those arguments here except to restate that (a) he has presented an expert declaration regarding the costs of arbitration; (b) he submitted his own declaration providing specific details about his finances and his inability to pay for the arbitrator's fees; and (c) another Black former SCAD employee provided a declaration and supporting deposition testimony showing how SCAD has weaponized the cost-shifting in prior arbitrations. Thus, Mr. Payne has gone far beyond the proof this Court in *Musnick* found insufficient.

## III. SCAD Creates a Factual Fallacy to Justify Its Unconscionable Arbitrator-Selection Provision.

SCAD's position that a retired federal judge outside Georgia could preside over his arbitration is a misplaced.[8] SCAD relegates the truth to a footnote: "As nothing in the ADRPA or Arbitration Procedures prohibits

---

[8] As it did in the proceedings in the district court, SCAD suggests that non-Article III judges would be available in Georgia to serve as arbitrators. SCAD Br. at 16-17. However, SCAD here still provides no support for its position, though the authority Mr. Payne referenced in his First Amended Complaint ("FAC") lists all former federal judges, including non-Article III judges, on the respective arbitration agencies' rosters. In Georgia, there are only two retired federal judges, of any kind, on their lists. *See* FAC at ¶ 107 & n.6 [Doc. 13].

17

remote arbitrations, the parties *could agree* to proceed remotely." SCAD Br. at 17 n.10 (emphasis added). This is accurate, as remote arbitration would require modification of the ADRPA's and APM's venue provisions, which in turn would require agreement of the parties.

Mr. Payne would not agree to remote arbitration. The evidence and presumably most of the witnesses are in Georgia.[9] Therefore, it is the only logical venue. Further, just as Mr. Payne's federal court trial would be in person in Georgia, he would not voluntarily forfeit his right to present his evidence in person to an arbitrator.

Thus, Mr. Payne is left with two arbitrators.  SCAD attempts to distinguish its arbitrator selection process from *Hooters of America, Inc. v. Phillips¸* 173 F.3d 933, 938-39 (4th Cir. 1999) and *Cannon v. S. Atlanta Collision Ctr., LLC*, No. 1:11-CV-1030-TWT-ECS, 2012 WL 1004914, at \*5 (N.D. Ga. Feb. 27, 2012), report and recommendation adopted, No. 1:11-CV-1030-TWT, 2012 WL 996696 (N.D. Ga. Mar. 22, 2012), arguing

---

[9] If an arbitration were remote in front of an arbitrator outside Georgia, Mr. Payne would lose his ability to subpoena Georgia-based witnesses. Because the law of this Court would not allow subpoenas to compel these witness's testimony at depositions, *see Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1160 (11th Cir. 2019), their testimony would be lost.

they are not "remotely comparable." SCAD Br. at 18 n.13. However, SCAD effectively has done what the Fourth Circuit prohibited in *Hooters*, but covered it in a thin veneer. By limiting the pool of arbitrators to retired federal judges who are available to arbitrate in Georgia, SCAD has "created exclusively" its severely limited pool of two White arbitrators.

## IV.    The ADRPA and APM Are Indefinite.

SCAD's argument that the ADRPA and APR are not indefinite essentially boils down to "the district court was right, and Mr. Payne is wrong." Mr. Payne has nothing to add on reply, except to reiterate that the Court cannot cure indefinite terms by injecting them with meaning. *See Morgan,* 142 S.Ct. at 1713; *Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301, 1311 (N.D. Ga. 2012). With respect to indefiniteness, Mr. Payne therefore rests on his opening brief.

## V.    The Non-Mutual Terms in the ADRPA and APM Make the Agreement Unenforceable.

As a threshold matter, though Mr. Payne in the court below placed his arguments regarding lack of mutuality under the substantive unconscionability heading, he is not now precluded from arguing that the non-mutual terms also are a measure of procedural unconscionability.

19

In his opposition to SCAD's Refiled MTCA ("Refiled MTCA Opp'n") [Doc. 38], Mr. Payne raised (a) four non-mutual terms impacting the steps an aggrieved employee—but not SCAD—has to follow before initiating arbitration (pre-arbitration meeting, 30-day pre-mediation notice requirement, mediation, and 30-day pre-arbitration notice requirement), Refiled MTCA at 26-27; (b) one non-mutual term allowing court litigation on matters far more likely to be brought by SCAD, *Id.* at 27-28; and (c) two non-mutual terms impacting the arbitration itself (30-day notice requirement for appeal of arbitrator's decision and the forum selection provision). *Id.* at 27. Both (a) and (b), above, as precursors to arbitration, may be measures of procedural unconscionability: "the oppressiveness of terms, and the presence or absence of meaningful choice." *NEC Techs., Inc. v. Nelson*, 267 Ga. 390, 392, 478 S.E.2d 769, 771–72 (1996). The non-mutual terms involving the arbitration itself—(c), above—would more likely be measures of substantive unconscionability.

Because the district court severed the forum selection provision based on Mr. Payne's indefiniteness argument, Report at 42-43 & 62, the only remaining non-mutual terms Mr. Payne raised on appeal were the

20

pre-arbitration elements: (a), above.[10] Therefore, while Mr. Payne's opposition to SCAD's MTCA in the district court challenged non-mutual procedurally and substantively unconscionable terms, all that remains on appeal are the procedurally unconscionable non-mutual terms. Therefore, it is appropriate for Mr. Payne to raise them under the rubric of procedural unconscionability.

However, the distinction between procedural and substantive unconscionability only matters if both forms of unconscionability must be present under Georgia law and if the terms of the ADRPA and APM are not indefinite. As set forth here and in Mr. Payne's opening brief, the Court may disallow enforcement of the arbitration agreement on substantive unconscionability grounds alone and the ADPRA and APM suffer from multiple indefinite terms. Therefore, whether the Court evaluates the lack of mutuality under the rubric of substantive or procedural unconscionability is of no matter.

As for the merits of SCAD's response, the case law SCAD references specifically addresses mutuality of *remedy*. SCAD Br. at 24, citing *Caley*

---

[10] Mr. Payne has not raised on appeal the non-mutual terms described in (b) and (c).

*v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005); *Saturna v. Bickley Constr. Co.*, 555 S.E.2d 825, 827 (Ga. Ct. App. 2001)); *Crawford v. Great Am. Cash Advance, Inc.*, 644 S.E.2d 522, 525 (Ga. Ct. App. 2007). This is different from mutuality of obligation.

Though, in a footnote, SCAD attempts to distinguish *Neibert v. Computer Scis. Corp.*, No. 1:12-CV-02277-SCJ, 2014 WL 11462721, at *7 (N.D. Ga. Feb. 4, 2014), *aff'd*, 621 F. App'x 585 (11th Cir. 2015), the defects in the ADRPA and APM are analogous to the defects the district court in *Neibert* determined were impermissibly non-mutual and therefore illusory. In *Neibert*, the court determined obligations in a Timekeeping and Expense Report Handbook were illusory because the defendant, at its discretion, could ignore them. *Id. Neibert* addressed the illusory nature of the entire contract, but its reasoning would apply equally to invalidate a portion of a contract with non-mutual obligations.

Again, it is undisputed that SCAD unilaterally may bypass the internal-review and mediation requirements in the ADRPA. Pl. Br. at 58, referencing Report at 61. Stated differently, these are contractual obligations Mr. Payne has, but SCAD does not have. This is distinguishable from *Caley*, 428 F.3d at 1378, which allowed an

22

arbitration agreement in which some *claims* would be subject to arbitration and others not.[11]    *See Cannon*, 2012 WL 1004914, *6 (disallowing arbitration agreement where defendant could "exercise unilateral control over the arbitral rules to be applied and the manner in which the proceeding is conducted, as well as how those who will arbitrate the dispute will be selected.").

## VI.    The Unconscionable Terms Should Make the Entire Arbitration Agreement Unenforceable.

SCAD's argument in support of severing the unconscionable terms in the ADRPA and APM is unavailing.  As Mr. Payne argued in his opening brief, the effect of severing multiple unconscionable terms is to incentivize a "see what sticks" approach to drafting contracts. Payne Br. at 62. It imposes on plaintiffs and the courts the burden of separating the wheat from the chaff; a process in this case that has taken nearly two

---

[11]  SCAD's own ADRPA provides a helpful illustration of the difference between non-mutual remedies and obligations. The provision allowing a party to seek injunctive or other equitable relief in a court of law for certain claims far more likely to be brought by SCAD is a non-mutual *remedy* allowed under Georgia law. Mr. Payne concedes this point and does not it raise on appeal. Conversely, SCAD's unilateral right to bypass the pre-arbitration procedures, which are binding on employees, are non-mutual contractual *obligations* rendering the contract illusory.

years and multiple rounds of briefing.[12]   In this respect, this Court's reasoning in *Perez v. Globe Airport Sec. Servs., Inc.*, 253 F.3d 1280, 1287 (11th Cir. 2001) (citations omitted), *subsequently vacated on procedural grounds*, 294 F.3d 1275 (11th Cir. 2002), though vacated, was spot on, and thus it is persuasive though not precedent. *See also Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1058 (11th Cir. 1998) ("presence of an unlawful provision in an arbitration agreement may serve to taint the entire arbitration agreement, rendering the agreement completely unenforceable, not just subject to judicial reformation").

Further, the district court already has stricken and reconstrued the forum selection provision. If this Court also determines (a) the arbitration fee-shifting mandate is unconscionable; (b) the process for selecting an arbitrator is unconscionable; (c) the convoluted language regarding the version of the ADRPA that was "in effect" needs to be stricken or re-written; (d) the process for initiating an arbitration is indefinite and therefore unconscionable; and (e) multiple terms are non-mutual and should be stricken, unconscionability would "permeate

---

[12] Mr. Payne filed his lawsuit on December 10, 2020, [Doc. 1], and SCAD filed its initial Motion to Dismiss and to Compel Arbitration on January 11, 2021. [Doc. 5].

throughout" the agreement, *Cannon*, 2022 WL 1004914, *8, and therefore it should be found unenforceable.  Even if some but not all of these terms, in addition to the already-stricken forum selection provision, are unconscionable, the result would be the same.

However, if the Court determines the agreement may be preserved with the unconscionable terms stricken, Mr. Payne would prefer this to the agreement remaining enforceable in its current form.  Therefore, Mr. Payne would seek severance in the alternative, as he did in the district court [Doc. 46 at 23 n.10].

## VII. SCAD's Witness Interference, if Established Through Discovery, Would Constitute a Waiver of Its Right to Compel Arbitration.

SCAD relies on two arguments in response to Mr. Payne's claim that SCAD's effort to settle a key witness's claims constituted a waiver of its right to seek arbitration.  First, SCAD suggests that there would be no waiver for obstructing an arbitration, but rather waiver would only be available in circumstances such as occurred in *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018),[13] in which a party

---

[13] *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022) addressed waiver in a context similar to *Gutierrez* but did not preclude other bases for waiver.

allowed litigation to progress and then sought arbitration as a seeming afterthought. SCAD Br. at 28-31. However, though the particular issue Mr. Payne raises here appears to be of first impression, courts have extended waiver beyond "abusing the judicial process… and then changing course mid-journey." *Id.* at 1236.  For example, in *Epps v. Rockmo Entm't, LLC*, 849 S.E.2d 510, 514 (Ga. Ct. App. 2020), the Georgia Court of Appeals found, as matter of first impression, "a party's failure to pay arbitration fees may amount to a waiver of its arbitration rights." *See also Cate v. Patterson*, 354 Ga. App. 108, 114, 840 S.E.2d 489, 495 (2020) (pursuing criminal action may constitute waiver); *cf. Betancourt v. Transportation Brokerage Specialists, Inc.*, 62 Cal. App. 5th 552, 557, 276 Cal. Rptr. 3d 785, 789 (2021) (class action waiver in arbitration agreement unenforceable in part because of claims of retaliation against class members).

There must be a level of witness interference that would constitute waiver, even if courts have not determined where that line would be drawn.  If an employer physically threatened employees to prevent them from participating as witnesses in an arbitration—far more extreme than what Mr. Payne alleges, but presented here as an example—a court

presumably would be inclined to find waiver.  The question, therefore, is not whether waiver may be appropriate in instances of witness interference, but rather whether SCAD's conduct crossed a line constituting waiver or, alternatively, whether Mr. Payne is entitled to limited discovery on the extent of SCAD's attempted payouts to witnesses.

This leads to SCAD's second argument, which rests in part on contested facts.  In short, SCAD claims, and Mr. Payne does not dispute, that its initial discussions with former fishing team member Noah Pescitelli occurred before Mr. Payne, through counsel, directly communicated with SCAD about this prospective litigation. SCAD Br. at 31. However, it occurred after Mr. Payne and others had complained to SCAD leadership about the race-based hostile environment on the team. FAC ¶¶ 32-34 & 61. Therefore, SCAD likely understood it was facing a substantial risk of legal action.

Further, based on the language in the proposed release, Mr. Pescitelli appears to have left the fishing team for some of the same concerns Mr. Payne had raised with SCAD leadership, including allegations of team members' sexual misconduct [Doc. 38-7] ("Pescitelli

filed several complaints… with SCAD against various members of the team; and … SCAD investigated each Complaint in accordance with the procedures set forth in SCAD's Code of Student Conduct… and SCAD's Sex-Based Discrimination, Sexual Harassment, and Sexual Misconduct Policy."). Therefore, even if SCAD's intent was to make a payout to Mr. Pescitelli in exchange for his silence about the alleged misconduct—and not in anticipation of Mr. Payne's lawsuit—the effect would be the same: Mr. Pescitelli's confidentiality agreement would prevent him from voluntarily cooperating with Mr. Payne's arbitration.  Because there is no right to subpoena witnesses in the discovery phase of arbitration, *Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc*., 939 F.3d 1145, 1160 (11th Cir. 2019), Mr. Payne would not know what Mr. Pescitelli's evidence or testimony would be until the arbitration hearing itself.  This puts Ms. Payne at a tremendous disadvantage; one that, if Mr. Pescitelli had signed the agreement, was purchased by SCAD for $36,630 [Doc. 38-7 at 3 (page 2 of Agreement)]. If SCAD had similar

settlements with other members of the fishing team, SCAD would hold nearly all the cards going into the arbitration hearing.[14]

At a minimum, SCAD's opposition notwithstanding, Mr. Payne should be entitled to limited discovery on the question of confidentiality agreements SCAD may have reached with Mr. Pescitelli,[15] other fishing team members, or their parents.

_____

[14] In *Residential Constructors, LLC v. ACE Prop. & Cas. Ins. Co.*, No. 2:05-CV-01318-BESGWF, 2006 WL 1582122, at *3 (D. Nev. June 5, 2006), which Mr. Payne cited in his opening brief, the court indicated it would allow additional depositions of non-party witnesses if the plaintiff had advised non-party witnesses not to speak informally with the defendant's representatives. *Id.* This is far less severe than the situation Mr. Payne may now face—non-party witnesses who would be precluded by contract from voluntarily cooperating under threat of a lawsuit seeking damages for "irreparable harm" [Doc. 38-7 at 5 (¶4)]—but without the ability in arbitration to subpoena non-party witnesses for depositions.

[15] Though a SCAD Senior Vice President submitted a declaration stating that Mr. Pescitelli had not executed that agreement, [Doc. 28-1 at ¶ 12], he does not indicate whether Mr. Pescitelli entered into a subsequent settlement and confidentiality agreement. Mr. Payne is entitled to discovery on this question.

## VIII. Mr. Payne Should Be Able to Take Early Limited Discovery on Arbitrability If Disputed Questions of Fact Are Dispositive.

The district court was correct that, based on its disposition of Mr. Payne's arguments opposing enforcement of the arbitration agreements, there would be no remaining issues upon which Mr. Payne could seek discovery. However, SCAD's position opposing early limited discovery on arbitrability hinges on this Court affirming the district court's substantive rulings both on cost-shifting and waiver. If the Court remands the dispute to the district court because material factual disputes remain regarding SCAD's heavy-handed threats of cost-shifting against opposing parties in arbitration and/or confidentiality agreements SCAD may have entered into with other witnesses, discovery would be necessary to resolve those disputes.

The Court may reverse the district court without remanding to resolved disputed material facts, in which case early limited discovery would not be necessary. Put plainly, Mr. Payne contends discovery should not be necessary, as the arbitration agreement is unconscionable on its face. However, early discovery would be necessary only if the narrow factual disputes Mr. Payne raises would be dispositive of the

question of arbitrability.  *See Bazemore v. Jefferson Cap. Sys*., LLC, 827 F.3d 1325, 1333 (11th Cir. 2016); *Reed v. Eastside Med. Ctr*., LLC, No. 1:19-CV-03967-SDG, 2020 WL 5659436, at \*7 (N.D. Ga. Sept. 23, 2020).

## CONCLUSION

For the reasons set forth herein and in Mr. Payne's opening brief, Mr. Payne respectfully requests that this Court **REVERSE** the district court's order granting SCAD's motion to compel arbitration and denying Mr. Payne's motion for limited early discovery, and **REMAND** the case to the district court for further proceedings consistent with this Court's decision.

Respectfully submitted on August 5, 2022.

/s/ Daniel Werner
Daniel Werner
Georgia Bar No. 422070
dan@decaturlegal.com
Counsel for Plaintiff-Appellant

Radford & Keebaugh, LLC
315 W. Ponce de Leon Ave.
Suite 1080
Decatur, Georgia 30030
(678) 271-0300 Telephone
(678) 271-0312 Facsimile

*Isaac Payne v. The Savannah College of Art and Design, Inc.,*
*Appeal No. 22-11556*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that this pleading is prepared in 14-point Century Schoolbook font and complies with this Court's 6,500 word-count limitation, having 6,075 words.

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that the foregoing Appellant's Reply Brief was filed through the Court's electronic filing system on November 28, 2022.

The undersigned counsel further certifies that on November 28, 2022, four (4) paper copies of the foregoing Brief of Appellant were mailed to the Clerk of Court by U.S. Priority Mail, postage prepaid.

/s/ Daniel Werner
Daniel Werner
Georgia Bar No. 422070

32