[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-11556

_____

ISAAC PAYNE,

                                             Plaintiff-Appellant,

*versus*

SAVANNAH COLLEGE OF ART AND DESIGN, INC.,

                                             Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-05000-JPB

_____

Before Branch and Luck, Circuit Judges, and Berger, District Judge.[*]

Branch, Circuit Judge:

Isaac Payne sued The Savannah College of Art and Design, Inc. ("SCAD") for race discrimination and retaliation after he was fired from his job as Head Fishing Coach. As part of his employment onboarding, however, Payne signed a document agreeing to arbitrate—not litigate—all legal disputes that arose between him and SCAD. Accordingly, SCAD moved to dismiss and compel arbitration. The district court, approving and adopting the magistrate judge's Report and Recommendation ("R & R"), granted SCAD's motion.

On appeal, Payne argues that the district court erred by ignoring that his agreement with SCAD was unconscionable and that SCAD waived its right to arbitrate. He also argues that the district court abused its discretion in rejecting his early discovery request. SCAD counters that (1) Payne freely agreed to a substantively fair arbitration provision, (2) SCAD never waived its right to arbitrate, and (3) the district court correctly denied Payne's discovery request. After careful review, and with the benefit of oral argument, we affirm the district court's order granting SCAD's motion to dismiss and compel arbitration.

---

[*] The Honorable Wendy Berger, United States District Judge for the Middle District of Florida, sitting by designation.

# I.    Background

## A.    Facts

The factual details of Payne's firing do not affect this appeal.[1] Instead, we focus on the facts surrounding his hiring and onboarding, particularly the details of his arbitration agreement with SCAD.

After accepting the Head Fishing Coach position in August 2015, Payne attended a new hire orientation. At the orientation, Payne signed numerous employment documents, including the Staff Handbook Acknowledgement.[2]

The Staff Handbook Acknowledgment provided: "I . . . acknowledge that I understand that the Staff Handbook contains current policies of SCAD, and I agree to read and comply with the policies contained in the handbook, including the Alternative Dispute Resolution Policy and Agreement . . . ." The

---

[1] Payne, a black man, alleged that he was fired because of his race and because he reported race-based abuse and threats by white student-athletes to SCAD leadership. Payne further alleged that when he reported these incidents, parents of the student-athletes campaigned to have him fired and SCAD complied. SCAD, in part through a declaration from its Executive Director of Human Resources, countered that Payne was fired for numerous non-race-related reasons. Because we ultimately affirm the district court's approval of SCAD's motion to dismiss and compel, the factual details of Payne's firing are best considered during arbitration.

[2] Payne declared that he "do[es] not remember exactly what [he] signed" because he was "rushed," but he admitted that it was his signature on the Staff Handbook Acknowledgment.

Acknowledgment further referred to the Alternative Dispute Resolution Policy and Agreement ("ADRPA") as "binding on SCAD and [SCAD's employee] as written, unless revised following the procedures set out in the ADRPA."

The ADRPA was included in the sixty-four-page Staff Handbook. The ADRPA began with a bolded title and spanned three double-columned pages. In pertinent part, the ADRPA provided:

- "[The ADRPA] involves an internal review, mediation and binding arbitration to resolve all legal disputes that may arise between SCAD and an employee."

- "The term 'Dispute' as used in this ADRPA encompasses and includes all legal claims or controversies between SCAD and any employee . . . including, but not limited to, claims arising in contract, tort, fraud, property, statutory or common law claims, or equitable claims."

- "If the parties are unable to resolve the Dispute through [internal review and then] mediation, then such Dispute may be submitted to arbitration at the election of either the [e]mployee or SCAD . . . ."

- "The parties agree that the arbitration shall be conducted in accordance with and subject to, the rules and procedures set forth in the Arbitration Procedures."

- "The parties will mutually agree on an arbitrator, who must be a retired federal judge unless a retired federal judge is not available to hear the dispute in a timely manner. The selected arbitrator must have a minimum of 5 years['] experience in the substantive practice area of the Dispute or in arbitrating similar types of Disputes."

- "In making his/her award, the arbitrator shall require the non-prevailing party to bear the cost of the arbitrator's fees, provided however, that SCAD will advance the cost of the arbitrator's fees at the initiation of the arbitration, subject to reimbursement by the employee following arbitration if the employee does not prevail."

The ADRPA also included an electronic link (as well as information on where physical copies could be obtained) to the second important document in this case, the Arbitration Procedures.[3] The Arbitration Procedures supplemented the ADRPA by providing additional details about the arbitration process.[4]

---

[3] The ADRPA also allowed the losing party to appeal the arbitrator's decision to a second arbitrator.

[4] The ADRPA and Arbitration Procedures work hand-in-hand and, for the most part, supply the same provisions. On one issue, the location of the arbitration, the magistrate judge determined that the ADRPA and Arbitration Procedures contradicted one another. Accordingly, the magistrate judge

We next outline Payne's pertinent factual allegations.

Payne declares that, in the event he would lose at arbitration, he could not afford to pay the arbitrator's fees. To supplement this contention, Payne provides declarations from Professor Imre Szalai, who declares that an arbitrator's fees in a case such as Payne's could range from $9,000 to $39,600, with the caveat that "[a] retired federal judge's rates may be higher," and Darnell Holcomb, who declares that he was fired from SCAD and the risk of paying significant arbitration costs discouraged him from continuing his discrimination case against SCAD.

Payne, as relevant to his waiver argument considered below, also emphasizes the details of SCAD's dealings with Noah Pescitelli, a scholarship-receiving member of the fishing team, who resigned from the team after Payne was fired. Pescitelli had allegedly complained to SCAD leadership "about some of the same issues [Payne] had sought SCAD leadership's help in resolving." After his resignation, "SCAD approached [Pescitelli] to ask if he and his family would sign a 'Confidential Settlement Agreement' in exchange for a scholarship of $36,630."[5] Pescitelli did not sign the agreement.

_____

severed the provision that was more favorable to SCAD, making the provision more favorable to Payne the operative provision.

[5] SCAD argued below that Payne's statements about the negotiations between SCAD and Pescitelli were hearsay. SCAD also contended that Payne had the facts wrong and that the confidentiality agreement offered to Pescitelli was in no way related to Payne or his potential legal action against SCAD. As

B.     *Procedural History*

Before filing this lawsuit, Payne sent SCAD a demand letter providing that he was "prepared to file litigation in federal court" if SCAD was not willing to settle for a certain amount.  SCAD's initial response referenced Payne's "binding arbitration agreement with SCAD."  SCAD later provided a copy of Payne's "signed agreement to be bound by SCAD's [arbitration] policy and procedures, as well as a copy of the [arbitration] procedures manual."  Despite SCAD reiterating that Payne had previously agreed to arbitration, Payne filed suit in the Northern District of Georgia.

After a series of motions and orders,[6] SCAD filed its Motion to Dismiss and Compel Arbitration ("MTD/MCA").  Payne then filed a Motion to Take Limited Early Discovery on Issues of Arbitrability ("Discovery Motion").  The magistrate judge's R & R

---

support, SCAD provided a declaration from Dr. Phil Aletto, SCAD's Senior Vice President for Admission and Student Success, that discussed SCAD's process of disbanding the fishing teams.  Aletto declared that "all then-current members of the Fishing Teams" were offered "to maintain and continue [their] athletic scholarships," but such an offer did not extend to Pescitelli because "he had already quit the Fishing Teams."  Accordingly, when Pescitelli threatened legal action against SCAD, "SCAD offered to reinstate [Pescitelli's] athletic scholarship . . . in exchange for a general release of claims reflected in a proposed settlement agreement" that included "a standard confidentiality clause."

[6] The procedural complexities preceding the magistrate judge's R & R are not important to this appeal.

recommended that SCAD's MTD/MCA be granted, and Payne's Discovery Motion be denied.

The district court adopted the R & R, noting that the R & R was "thorough" and "carefully addressed each of the parties' contentions." In pertinent part, the district court agreed that (1) the arbitration agreement was not unconscionable,[7] (2) SCAD—by offering a settlement agreement to Pescitelli—did not waive its rights to arbitrate its dispute with Payne, and (3) Payne's Discovery Motion should be denied.[8] Accordingly, the district court ordered Payne to submit his dispute to arbitration.

Payne appeals.

## II.    Standard of Review

"We review de novo an order granting a motion to dismiss a complaint and compel arbitration." *Young v. Grand Canyon Univ., Inc.*, 980 F.3d 814, 818 n.3 (11th Cir. 2020).

"We review the [d]istrict [c]ourt's ruling on discovery matters only for abuse of discretion." *Khoury v. Miami-Dade Cnty.*

---

[7] Payne's unconscionability argument was multi-faceted. He argued that the ADRPA was unconscionable because (1) its cost-shifting provision carried potentially significant costs that inhibited his ability to vindicate his rights, (2) its arbitrator-selection provision limited the pool of arbitrators to two white men, (3) it contained a confidentiality provision, and (4) it included provisions that were indefinite, non-conspicuous, and non-mutual.

[8] The R & R concluded that "[t]here [was] not good cause for allowing [Payne's] discovery [requests]" because his "waiver arguments to which [his] discovery requests relate[d] unequivocally fail[ed]." The district court agreed.

*Sch. Bd.*, 4 F.4th 1118, 1125 (11th Cir. 2021).  "District judges are accorded wide discretion in ruling upon discovery motions, and appellate review is accordingly deferential."  *Harris v. Chapman*, 97 F.3d 499, 506 (11th Cir. 1996).

## III.    Discussion[9]

Payne brings four arguments on appeal.  First, Payne contends that the district court erred in determining that the ADRPA is not unconscionable.  Second, and relatedly, Payne argues that the agreement's unconscionable provisions should not be severed from the agreement; rather, he contends that the entire agreement is unenforceable.  Third, Payne argues that the district court erred in determining that SCAD did not waive its right to arbitrate.  Fourth, Payne argues that the district court erred in not permitting him to take early discovery on issues of arbitrability.  We address each argument in turn.

### A.    Unconscionability

Payne argues that the arbitration agreement is unconscionable for a number of reasons.  First, Payne argues that the cost-shifting provision is substantively unconscionable because the risk of having to pay the arbitrator's fees will force him to abandon his claim; thus, the provision prevents him from vindicating his rights.  Second, Payne argues that the arbitrator-

---

[9] The parties' 2015 agreement is the operative arbitration agreement.  The ADRPA allowed SCAD to modify the agreement as long as it provided 30 days' written notice to its employee.  SCAD's attempted amendment in 2019 failed because it did not provide Payne the required notice.

selection provision is substantively unconscionable because it limits the pool of arbitrators to two white men, which he argues undermines the neutrality of any potential proceeding. Third, Payne argues that the agreement is procedurally unconscionable as evidenced by a number of provisions that are either indefinite or non-mutual.

The unconscionability standard is hard to satisfy under Georgia law.[10] The Supreme Court of Georgia has described an unconscionable contract as "one that no sane man not acting under a delusion would make and that no honest man would take advantage of, one that is abhorrent to good morals and conscience, and one where one of the parties takes a fraudulent advantage of another." *Innovative Images, LLC v. Summerville*, 848 S.E.2d 75, 83 (Ga. 2020) (quotations omitted); *see also BMW Fin. Servs. N.A., Inc. v. Smoke Rise Corp.*, 486 S.E.2d 629, 630 (Ga. Ct. App. 1997) (concluding that a contract provision was not unconscionable because it did not "shock the conscience," among other considerations). "Under Georgia law, procedural unconscionability addresses the process of making the contract,

---

[10] The parties agree that Georgia law governs but disagree over the proper Georgia law standard for unconscionability. Whereas SCAD contends that "Georgia law requires both procedural and substantive unconscionability for a contract to be struck down as unconscionable," Payne argues that "both need not be present in the same quantum to render a contract unconscionable." Because we ultimately conclude that the arbitration agreement is neither procedurally nor substantively unconscionable, we need not resolve this dispute over Georgia law because Payne fails to prove unconscionability under either standard.

while substantive unconscionability looks to the contractual terms themselves." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1377 (11th Cir. 2005) (alteration adopted and quotation omitted).

As for procedural unconscionability, well-established Georgia law provides that "the mere existence of an arbitration clause does not amount to unconscionability." *Saturna v. Bickley Constr. Co.*, 555 S.E.2d 825, 827 (Ga. Ct. App. 2001) (quotation omitted). Rather, "where . . . a binding arbitration agreement is bargained for and signed by the parties, it is the complaining party that bears the burden of proving that it was essentially defrauded in entering the agreement." *Innovative Images*, 848 S.E.2d at 83. Factors that play a role in the procedural unconscionability determination include the "age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice." *NEC Techs., Inc. v. Nelson*, 478 S.E.2d 769, 772 (Ga. 1996).

"As to the substantive element of unconscionability, courts have focused on matters such as the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of risks between the parties, and similar public policy concerns." *Id.*

With this legal framework in mind, we address Payne's various unconscionability arguments.

i.      Substantive Unconscionability

We start with substantive unconscionability.

a.      Cost-Shifting Provision

The ADRPA's cost-shifting provision provides:

> In making his/her award, the arbitrator shall require the non-prevailing party to bear the cost of the arbitrator's fees, provided however, that SCAD will advance the cost of the arbitrator's fees at the initiation      of      the      arbitration,      subject      to reimbursement      by      the      employee      following arbitration if the employee does not prevail.

Payne alleges that this provision is substantively unconscionable because it "serves no purpose other than . . . dissuad[ing] potential claimants from pursuing their rights under the law."  Payne's evidence included a law professor's declaration that calculated the likely costs of arbitrating Payne's claims, Payne's own declaration about the effect that the costs would have on his family, and the declaration of another employee who arbitrated against SCAD but withdrew his arbitration allegedly due to the risk of incurring significant costs if he lost.  SCAD counters that the district court correctly determined that "Payne's evidence is [too] speculative at this stage of the litigation" (*i.e.*, Payne may win in arbitration and would not be required to pay anything) such that his substantive unconscionability argument must fail under our precedents.

    We start with Payne's argument that our case that rejected a similar argument against cost-shifting provisions, *Musnick v. King*

*Motor Company of Fort Lauderdale*, 325 F.3d 1255 (11th Cir. 2003), has been abrogated in relevant part by the Supreme Court's holding in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008).

In *Musnick*, we analyzed an arbitration agreement's "loser pays" provision that Musnick challenged on the ground that "the provision . . . awarding costs and fees to the prevailing party rendered it unenforceable." 325 F.3d at 1257. We concluded that Musnick's challenge failed for the following reasons. To start, we set out the proper standard: "The party seeking to avoid arbitration . . . has the burden of establishing that enforcement of the agreement would preclude him from effectively vindicating [his] federal statutory right in the arbitral forum." *Id*. at 1259 (quotations omitted). Then, we determined that Musnick's evidence was "too speculative" to render his agreement unenforceable because he had not shown that he was likely to lose his arbitration. *Id*. at 1260. Stated differently: "Whether Musnick [would], in fact, incur attorneys' fees . . . depend[ed] entirely on whether he prevail[ed] in arbitration. If he [did], he [would] incur no fees . . . [and would] not have been deprived of any statutory right or remedy . . . ." *Id*. at 1261. Next, we also noted that Musnick's evidence, which was merely a statement that he feared he would be unable to pay an award of attorneys' fees against him, was "wholly inadequate to establish" that he was inhibited from vindicating his rights. *Id*. at 1260. Finally, we buttressed our analysis by stating that Musnick, if he were to lose, would have the ability to challenge the arbitrator's award of attorneys' fees in federal court. *Id*. at 1261 (explaining that "arbitration awards may

be vacated if they are in manifest disregard of the law" (quotation omitted)).

Payne argues that the Supreme Court's decision in *Hall Street* abrogated *Musnick* "in relevant part" by "severely limit[ing] any right of appeal to a court." *See Hall Street*, 552 U.S. at 590. While he accurately characterizes *Hall Street*'s effect on *Musnick*'s third point (regarding the losing party's ability to challenge an arbitral award in federal court), he is incorrect that *Hall Street* should end our reliance on *Musnick*. 325 F.3d at 1261. In *Hall Steet*, the Supreme Court simply limited review of arbitration awards under the Federal Arbitration Act ("FAA") to the Act's textually-provided avenues—thereby limiting the amorphous "manifest disregard of the law" category that had developed in prior caselaw.[11] *Hall Street*,

---

[11] Sections 10 and 11 of the FAA provide for limited review of an arbitration award. 9 U.S.C. §§ 10, 11. For example, Section 10 provides the following four avenues for challenging an arbitration award:

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other

552 U.S. at 585, 590.  Following *Hall Street*, in *Frazier v. CitiFinancial Corp., LLC*, we followed suit, foreclosing wide-ranging challenges to arbitration awards: "We hold that our judicially-created bases for vacatur are no longer valid in light of *Hall Street*."  604 F.3d 1313, 1324 (11th Cir. 2010).  *See also White Springs Agric. Chems., Inc. v. Glawson Invs. Corp.*, 660 F.3d 1277, 1282–83 (11th Cir. 2011) (declining to review a challenge to an arbitration award because "[e]ven though [appellant] presents its argument in terms of the FAA, [appellant] asks us to do what we may not—look to the legal merits of the underlying award").

    But the linchpin of *Musnick*—which was unaffected by *Hall Street*—is the requirement that appellants demonstrate that they are *likely* to bear prohibitive costs (*i.e.*, that their costs are not merely speculative).  *Musnick*, 325 F.3d at 1261.  We have emphasized this point in our more recent case law.  For example, in *Escobar v. Celebration Cruises Operator, Inc.*, 805 F.3d 1279, 1291 (11th Cir. 2015), we interpreted *Musnick* to mean that a plaintiff's "[s]peculative fear of high fees" would be insufficient to satisfy his burden to "prove the likelihood of prohibitive costs."  Thus, post-

---

misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceed their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Id.* § 10(a).

*Hall Street* we have explicitly stated that the likely-to-bear-prohibitive-costs prong is still intact such that *Musnick* remains good law. *See, e.g., United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009) ("In addition to being squarely on point, the doctrine of adherence to prior precedent also mandates that the intervening Supreme Court case *actually abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior panel*." (emphasis added)).

Putting it all together, for Payne to prove that his arbitration agreement with SCAD is unconscionable because of the agreement's cost-shifting provision, he must provide evidence of "(1) the amount of fees he is likely to incur and (2) his inability to pay those fees." *Suazo v. NCL (Bahamas), Ltd.*, 822 F.3d 543, 554 (11th Cir. 2016) (quoting *Escobar*, 805 F.3d at 1291 (internal quotations omitted)). He cannot satisfy the first step. The "problem" for Payne is that he might win. And if he were to prevail, SCAD would be required to pay for the arbitration. Thus, Payne has not shown that he is "likely to incur" any costs whatsoever and cannot prevail under the standards we have set forth.[12] *See Musnick*, 325 F.3d at 1261.

Our conclusion is further supported by other considerations.

---

[12] Payne's request that we ignore our binding precedent in favor of the law recited in an out-of-Circuit, district court case, *Crespo v. Kapnisis*, No. 21-cv-6963, 2022 WL 2916033 (E.D.N.Y. July 25, 2022), necessarily fails.

First, we have recognized that an appellant's rights are less threatened when an appellant is not required to pay the arbitration costs up front. *See Escobar*, 805 F.3d at 1292 (emphasizing that appellant's challenge was "premature" because the "cost-splitting clause state[d] that [appellee] will pay 'the initial cost of arbitration'"). Such is the case here where SCAD is advancing the costs of arbitration.[13] That is, Payne will not be excluded from the arbitral forum, and he will have the ability to vindicate his rights through the arbitration process to which he agreed.

Second, Payne's instant appeal is even more speculative because of a unique feature of the Arbitration Procedures which provides for an appeal to a second arbitrator: "The awards and orders of the Arbitrator shall be final and binding unless, within thirty (30) days of service of the Arbitrator's final award, a party serves notice to the other parties of the arbitration of intent to appeal the Arbitrator's awards and orders to a second Arbitrator." Thus, Payne's appeal is especially speculative in the sense that (1) he has brought his case before arbitration can determine the winner and loser, and (2) even the result of the first arbitration could be appealed to a second arbitrator. Payne contends that this provision cuts in his favor because the additional costs of a second arbitration would further increase the ADRPA's deterrent effect. But that

---

[13] The ADRPA provided that "[i]n making his/her award, the arbitrator shall require the non-prevailing party to bear the cost of the arbitrator's fees, provided however, that SCAD will advance the cost of the arbitrator's fees at the initiation of the arbitration . . . ."

argument ignores that the second appeal is optional. We look to this provision only to emphasize the exceptionally speculative nature of Payne's complaint at the current stage.

Third, Payne argues that because he provided evidence extensively detailing the potential costs of arbitration, and the effect that those costs would have on his livelihood, his claim is less "speculative" than the generalized grievance in *Musnick*. 325 F.3d at 1260 (finding Musnick's mere recitation that he "genuinely fear[ed] the imposition of attorney's fees" because he would be "unable to pay" "wholly inadequate to establish that the arbitration would result in prohibitive costs that [would] force him to relinquish his claim"). True. Payne's evidence included a law professor's declaration that calculated the likely costs of arbitrating Payne's claims, Payne's declaration about the effect the costs would have on his family, and the declaration of another employee who withdrew his arbitration claim against SCAD allegedly out of fear of incurring significant costs if he lost. But Payne conflates the likelihood that there will be arbitration costs (not a factor under our precedent) with the likelihood that *he will incur those costs* (the touchstone of our analysis).[14] Thus, while he must bring evidence

---

[14] Payne also argues that "the cost-shifting is not speculative, as the ADRPA shifts the arbitrator's fees . . . to the non-prevailing party, and this is a non-discretionary contractual obligation." This argument suffers from the same conflation. Our precedent is not concerned with whether fees themselves are "speculative," but with whether it is "speculative" that the party challenging the arbitration agreement will be the party that has to pay those fees. *Musnick*, 325 F.3d at 1261 ("Whether Musnick will, in fact, incur attorneys' fees in this matter depends entirely on whether he prevails in arbitration.") Payne

of his potential costs (and he has), such a showing is insufficient when Payne has not satisfied our primary consideration—showing that he is "likely" to incur those costs.

Finally, we reemphasize that these terms are part of an agreement into which Payne voluntarily entered. As such, he has the burden of establishing that the agreement is substantively unfair. For the reasons above, Payne has not satisfied his burden, and we conclude that the cost-shifting provision is not substantively unconscionable. *See Innovative Images*, 848 S.E.2d at 83–84.

b.    Arbitrator Selection Provision

Payne also contends that the ADRPA is substantively unconscionable because the arbitrator-selection provision would "effectively limit the pool of arbitrators to two White men." Aside from the fact that Payne's estimation is questionable, he has cited absolutely no authority for his contention that it would be unconscionable for Payne's arbitration to be conducted by a white arbitrator. Thus, he has not carried his burden on this point.[15]

_____

counters that employees often lose employment arbitration disputes, but that argument is also speculative because generalized statistics do not account for the individual facts of his case. Indeed, if Payne did not believe his claim was meritorious, then he would have had little reason to initiate this lawsuit.

[15] Payne also argues that "[t]he ADRPA is unconscionable because its method of selecting arbitrators gives SCAD unilateral control to select the arbitrator." The ADRPA, however, provides that "[t]he parties will mutually agree on an arbitrator," and this understanding is confirmed in the Arbitration Procedures that give each party equal rights on proposing and striking potential

ii.    Procedural Unconscionability

Turning to Payne's arguments as to procedural unconscionability, he argues that various terms in the ADRPA and Arbitration Procedures are either indefinite (*i.e.*, the court is left to ascertain the intention of the parties by conjecture) or non-mutual (*i.e.*, the agreement confers certain rights on SCAD but not Payne) such that the arbitration agreement is procedurally unconscionable. We disagree, especially in light of the demanding standard for satisfying procedural unconscionability which requires "the complaining party" to prove "that it was essentially defrauded in entering the agreement." *Innovative Images*, 848 S.E.2d at 83.

"The law does not favor destruction of contracts on grounds of uncertainty." *Kitchen v. Insuramerica Corp.*, 675 S.E.2d 598, 601 (Ga. Ct. App. 2009); *see also* O.C.G.A. § 13-2-2(4) ("The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part[.]"). With that said, "indefiniteness in subject matter so extreme as not to present anything upon which the contract may operate in a definite manner renders the contract void." *Fay v. Custom One Homes, LLC*, 622 S.E.2d 870, 872–73 (Ga. Ct. App. 2005) (alteration adopted and quotation omitted). And "[a] contract cannot be enforced if its terms are incomplete, vague,

---

arbitrators. Thus, Payne's argument fails because it is directly contrary to the terms of the agreement.

indefinite[,] or uncertain." *Aukerman v. Witmer*, 568 S.E.2d 123, 126 (Ga. Ct. App. 2002) (quotation omitted).

"Georgia law provides that an arbitration provision is not unconscionable because it lacks mutuality of remedy." *Caley*, 428 F.3d at 1378 (alterations adopted and quotation omitted); *see also Saturna*, 555 S.E.2d at 827 ("[T]he fact that [one party] had additional means of redress available [that were not available to the other party] did not render the contract unenforceable due to unconscionability."). The lack of mutuality is not detrimental because arbitration is intended to offer "simplicity, informality, and expedition." *Id.* (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991)).

### a.    Indefiniteness

Payne argues that three terms in the ADRPA and Arbitration Procedures are either ambiguous or contradictory and, therefore, indefinite.

First, Payne argues that the terms in the respective agreements governing the selection of an arbitrator are contradictory.[16]    Specifically, he points to the Arbitration

---

[16] The terms that Payne points to provide the following:

> [ADRPA]: The parties will mutually agree on an arbitrator, who must be a retired federal judge unless a retired federal judge is not available to hear the dispute in a timely manner. The selected arbitrator must have a minimum of 5 years['] experience in the substantive practice area of the Dispute or in arbitrating similar types of Disputes.

Procedures' use of the term "mediator" (rather than arbitrator) in one instance as proof that the ADRPA and Arbitration Procedures contradict one another. However, we find the language concerning arbitration to be clear. That the document may also provide for a mediator or may include a scrivener's error does not change our conclusion. In any event, this small discrepancy is nowhere near enough to clear the high bar for proving unconscionability under Georgia law. *Innovative Images*, 848 S.E.2d at 83; *see also* O.C.G.A. § 13-2-2(4) ("The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part[.]").

Second, Payne argues that the ADRPA and Arbitration Procedures are contradictory because the ADRPA requires an employee seeking to initiate the dispute resolution process to "mak[e] a written request to the vice president for human

_____

[Arbitration Procedures]: Within a reasonable time after receiving the Request for Arbitration, the Vice President of Human Resources or a designated representative, and the employee or his/her designated representative, shall each submit to the other a list of four (4) proposed Arbitrators. The arbitrator will be selected by mutual agreement of the parties. When submitting the list of proposed arbitrators, each party agrees that all proposed arbitrators shall have a minimum of five (5) years of previous experience or background in the subject matter of the arbitration. In addition, the parties agree that the proposed mediators shall include as many retired federal judges as possible who are available to hear the dispute in [a] timely manner.

resources," while the Arbitration Procedures require "[a] party who desires to submit a legal claim to arbitration [to] submit a completed Request for Arbitration to the College's Vice President of Human Resources."  We agree with the magistrate judge's analysis that these terms are "not contradictory" because although "[t]he terms may be worded slightly different[,] . . . they clearly are referencing the same step in the alternative dispute resolution process."  This miniscule difference is certainly not "extreme" enough for Payne's challenge to prevail.  *Fay*, 622 S.E.2d at 872.

Third, Payne argues that the ADRPA's "in effect" provision is ambiguous because it does not specify which agreement will govern a dispute: "SCAD retains the right to modify or terminate this ADRPA and the Arbitration Procedures on thirty days' written notice.  The policy, if any, in effect at the time a request for mediation and/or arbitration is initiated, will govern the process by which the Dispute is resolved."  This provision is not ambiguous in any way; the policy "in effect" was the policy that both parties agreed to—the 2015 ADRPA and the related Arbitration Procedures.  As stated previously, we agree with the district court that because SCAD's attempted amendment in 2019 failed for lack of notice, the parties' 2015 agreement is the operative one.

### b.    Mutuality

Payne also argues that "[t]he ADRPA and [the Arbitration Procedures] have a number of non-mutual provisions that make them procedurally unconscionable."  Payne's main focus is a provision allowing SCAD (but not its employees) to bypass internal

review and mediation and fast-forward the dispute resolution process to arbitration: "At its option, SCAD may elect to bypass one or more steps prior to arbitration for Disputes with the employee." Although Payne contends that there are "numerous" non-mutual provisions, he cites only two and his second argument merely repackages his first.[17]

Payne's argument simply cannot survive because although he indicates that at least one provision (allowing SCAD to bypass certain dispute resolution steps) provides SCAD a right that is not also bestowed on him, the cited provision is minor, and similar non-mutual provisions have passed muster under Georgia law. *See Saturna*, 555 S.E.2d at 826–27 (determining that a contract that provided "additional means of redress" to one party did not render the contract unconscionable for being non-mutual). We conclude that the non-mutual provisions are not detrimental to the contract and Payne was not "essentially defrauded" in entering this arbitration agreement. *Innovative Images*, 848 S.E.2d at 83.

*        *        *

Simply stated, we agree with the district court's finding that Payne's arguments on this small subset of provisions "do not put

---

[17] We note that Payne does not complain about the non-mutual provision that requires SCAD to advance the costs of the arbitration (*i.e.*, a non-mutual provision that benefits Payne).

the agreement over the very high bar for finding unconscionability under Georgia law."[18]  *See Innovative Images*, 848 S.E.2d at 83.

### B.    Waiver

Payne argues that SCAD—by asking Pescitelli (a former member of the fishing team) to sign a confidentiality agreement when attempting to resolve a lawsuit threatened by Pescitelli roughly a year before Payne's legal action—has somehow waived its right to arbitrate Payne's claim.   Payne contends that, by entering or attempting to enter into confidentiality agreements with student-athletes[19] who could participate or provide information related to Payne's claims, SCAD has cut Payne off from effective pre-hearing discovery from third parties.   Such preclusive efforts, in Payne's view, constitute interference with third-party litigation and result in waiver of arbitrability.

Our waiver doctrine is typically implicated when parties have "invoked the litigation machinery" before reversing course and claiming that arbitration was the proper avenue all along. *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018)

---

[18] Because we conclude that there are no unconscionable provisions in the ADRPA or the Arbitration Procedures, we need not address Payne's argument regarding severability.

[19] Payne tries to broaden the scope beyond Pescitelli by arguing that "[t]he question of whether SCAD entered into confidential settlement agreements with other former Fishing Team members . . . could only be answered through discovery."   We do not bite at this last-ditch argument because Payne's waiver argument is altogether meritless.

(alteration adopted and quotation omitted); *see also Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1711 (2022) ("Sometimes, [defendants] engage in months, or even years, of litigation—filing motions to dismiss, answering complaints, and discussing settlement—before deciding they would fare better in arbitration. When that happens, the court faces a question: Has the defendant's request to switch to arbitration come too late?").

As an initial matter, Payne asks us to apply our waiver doctrine in a novel manner.[20]  We have never held that a party waives its right to arbitrate based on its actions taken in a previous legal action—especially when that party did not bring the lawsuit at bar and has repeatedly insisted that arbitration is the proper dispute resolution channel.  And we decline to do so now.  Rather, because SCAD (1) has not engaged in extensive use of the litigation process, (2) alerted Payne before he filed suit that his dispute must be arbitrated, and (3) promptly filed its MTD/MCA, we hold that SCAD has not waived its ability to insist on arbitrating Payne's claim per their agreement.

C.      *Early Discovery*

Payne's final challenge on appeal is that the district court "erred in not permitting [him] to take limited early discovery on issues of arbitrability."  In particular, Payne sought SCAD's communications with "prospective witnesses" such as Pescitelli

---

[20] Payne admits as much.  He characterizes his wavier argument as one that "appears to be of first impression."

and details of "SCAD's past arbitrations with employees and former employees." The district court determined that because each of Payne's arguments failed, "there [was] no reason to allow discovery regarding the validity and enforceability of the arbitration agreement." We conclude that the district court's analysis of the underlying arbitration agreement was sound. Accordingly, the district court did not abuse its discretion in overruling Payne's unnecessary discovery request. *Harris*, 97 F.3d at 506 ("District judges are accorded wide discretion in ruling upon discovery motions, and appellate review is accordingly deferential.").

## IV.   Conclusion

Payne agreed to arbitrate his legal disputes against SCAD. Attempting to evade his agreement, Payne searches for a legal hook that will catch him a break. He has not found it; rather, we conclude that his arbitration agreement is neither substantively nor procedurally unconscionable, that SCAD did not waive its right to enforce arbitration, and that the district court did not abuse its discretion in overruling Payne's request for early discovery. In short, we conclude that Payne is bound by his agreement to arbitrate his legal claims against SCAD.

**AFFIRMED.**